Priscilla KEENE

v.

FAIRCHILD COMPANY, et al.

Supreme Judicial Court of Maine.

Argued May 20, 1991.

Decided July 11, 1991.

Theodore H. Kirchener (orally), Norman, Hanson & DeTroy, Portland, for employee.

James A. McCormack, Jr. (orally), Verrill & Dana, Portland, for employer.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

CLIFFORD, Justice.

■ Fairchild Company (Fairchild) and its insurer, Kemper Insurance Company, appeal from the decision of the Appellate Division reducing the amount that the Workers' Compensation Commission determined Fairchild had overcompensated Priscilla Keene, its former employee, for her work-related injuries. We conclude that the Commission, in calculating the overpayment recoverable by Fairchild, correctly included benefits paid to Keene between the date she refused Fairchild's offer of work and the date the Commission determined that the work offered by Fairchild was suitable to Keene's physical condition. *See* 39 M.R.S.A. § 66–A (Supp.1986), *amended by* P.L.1987, ch. 559, § B(35). Accordingly, we vacate the Appellate Division's decision that limited the overpayment to only those benefits paid between the date Keene refused the offer of suitable work and the date she was terminated by Fairchild.

In 1985, Priscilla Keene slipped and fell on the floor of Fairchild Company and sustained a work-related injury to her right wrist and shoulder. In accordance with its statutory obligation to transfer a disabled employee to a position suitable to the employee's physical condition, 39 M.R.S.A. § 66–A, Fairchild offered Keene light-duty work on several occasions. Keene initially accepted Fairchild's offer of a position as a communications operator, but after working a few days she left the job on March 10, 1986, claiming that the job was not physically suitable for her. Fairchild terminated Keene on May 15, 1986.

Pursuant to 39 M.R.S.A. § 66–A,[1] Fairchild filed a petition requesting the Work-

---

1. 39 M.R.S.A. § 66–A (Supp.1986), *amended by* P.L.1987, ch. 559, § B(35), provides in relevant part:

ers' Compensation Commission to order forfeiture of Keene's workers' compensation benefits on the ground that she had refused work suitable to her physical condition. After a hearing, the Commission found that the work offered by Fairchild was suitable and that Keene's leaving the job after a few days constituted a refusal of an offer of suitable work. The Commission found that the overpayment Fairchild was entitled to recover from Keene included benefits that it had paid to her between the date she refused the offer, March 10, 1986, and the date of the Commission's decree, January 4, 1988.[2] On appeal by Keene, the Appellate Division affirmed the Commission's determination that Keene had refused an offer of suitable work, but vacated the Commission's calculation of the amount that Keene had been overcompensated. Construing the provision in section 66–A that "the order reducing benefits shall remain in effect only as long as the employee fails to accept the offer of suitable work," the Appellate Division reasoned that Keene's failure to accept Fairchild's offer of suitable work ended on the date she was terminated because the offer was no longer open. The Division there-

fore reduced the overpayment recoverable by Fairchild to include only benefits paid to Keene between March 10, 1986, the date she refused the offer, and May 15, 1986, the date she was terminated. We granted Fairchild's petition for appellate review. *See* 39 M.R.S.A. § 103–C (1989).

■■■ We agree with Fairchild's contention that, contrary to the Appellate Division's reasoning, Fairchild did not surrender its ability to recoup subsequent benefits that it paid to Keene when it terminated Keene's employment. Unless a statute expresses a contrary intent, the plain, common and ordinary meaning of statutory language controls the interpretation of the statute. *Stanley v. Tilcon Maine, Inc.*, 541 A.2d 951, 952 (Me.1988). The plain meaning of the provision in section 66–A that an employee's benefits shall be reduced "only as long as the employee fails to accept the offer of suitable work" is that a reduction of benefits shall continue unless and until the employee accepts an offer of suitable work. Section 66–A does not require an employer to keep an offer of suitable work open after the offer has been refused.[3] Fairchild's termination of Keene

---

If any injured employee refuses to accept an offer of suitable work, the employer or insurer may, in addition to exercising any other rights it may have, file a petition for a reduction of benefits. If, after hearing, the commission finds that an employee refused to accept the offer and the position offered was suitable to his physical condition, it shall order the reduction of all benefits payable under sections 54–A and 55–A. The reduction shall be in an amount equal to the difference between the employee's weekly benefits and the benefits he would have been entitled to receive if he had accepted the offer. The order reducing benefits shall remain in effect only as long as the employee fails to accept the offer of suitable work.

If the commission determines that the employee has refused to accept an offer of work suitable to his physical condition, all or a portion of the benefits paid between the time the offer was refused and the commission's determination shall be considered an overpayment. The amount of the overpayment shall be the difference between the employee's benefits for that period, and the benefits, if any, he would have been entitled to receive if he had accepted the offer. The amount of the overpayment shall be recoverable by the employer or insurer by making deductions from

future benefits payments in such amounts as the commission may determine. . . .

2. In accordance with the provisions of 39 M.R.S.A. § 66–A (Supp.1986), the Commission calculated the amount of the overpayment recoverable by Fairchild as the difference between the benefits Keene received during the relevant period and the benefits she would have received during that period if she had accepted the offer of suitable work.

3. The practical effect of the Appellate Division's interpretation of section 66–A is that in order to recoup benefits paid out during that time, an employer would be required to keep open an offer of suitable work from the time that the employee refuses the offer until the Commission makes a determination that an offer of suitable work was refused. No such requirement is expressed in the statute. Moreover, such a requirement would place an unrealistic burden on the employer. In this case, the Appellate Division's construction of the statute would have required Fairchild to keep the offer open from March 1986, when Keene refused the offer, through January 1988, when the Commission determined Keene had refused work suitable to her physical condition.

therefore has no bearing on Fairchild's ability to recover the overpayment of benefits paid to Keene following her refusal of the offer. Because Keene never accepted or attempted to accept Fairchild's offer of suitable work after she refused the offer, benefits paid to her after, as well as before, her termination were properly considered by the Commission in determining the amount of overpayment. In deeming that the overpayment included benefits paid to Keene during the entire period between the date she refused the work offer and the date the Commission determined that the offered work was suitable, the Commission complied with the statutory requirement that "benefits paid between the time the offer was refused and the commission's determination shall be considered" in calculating the overpayment. 39 M.R.S.A. § 66–A.[4]

Keene contends that the Appellate Division's reduction of the benefits recoverable by Fairchild should be upheld on the alternative ground that there is no competent evidence to support the Commission's finding that the offered job was suitable for Keene or that Keene refused the job offer. We review the Commission's findings of fact directly and independently of the Appellate Division, *Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1119 (Me. 1985), and uphold those findings if they are supported by competent evidence in the record and reasonable inferences that may be drawn from that evidence. *Bowen v. Maplewood Packing Co.*, 366 A.2d 1116, 1118 (Me.1976).

The Commission did not find to be credible Keene's testimony concerning the subjective nature of the physical symptoms that allegedly prevented her from perform-

ing the job offered by Fairchild. A doctor who examined Keene not long after she refused Fairchild's job offer, Dr. Stephen Klein, gave testimony that the Commission did find believable. Dr. Klein testified that the job of communications operator was "well within" Keene's capabilities, that Keene had an "unrestricted work capacity," and that she "could return to work immediately without any restriction." The Commission is entitled to weigh the credibility of witnesses, including expert medical witnesses, and accept testimony that it finds to be reliable. *Gordon v. Aetna Cas. & Sur. Co.*, 406 A.2d 617, 619 (Me.1979). There is competent evidence in the record to support the Commission's finding that Keene refused an offer of work that was suitable to her physical condition.[5]

The entry is:

Decision of the Appellate Division vacated. Remanded to the Appellate Division for entry of an order affirming the decision of the Commissioner.

All concurring.

4. Fairchild's termination of Keene's employment did not put an end to Fairchild's obligation to provide Keene with suitable work. Section 66–A provides that an employer's obligation to provide an employee with suitable work "shall continue until one year after the employee has reached the stage of maximum medical improvement in the judgment of the commission." 39 M.R.S.A. § 66–A (Supp.1986). After her termination, Keene retained the right to petition the Commission to require Fairchild to provide her with suitable work. *Id.* If Fair-

child failed to comply with an order of the Commission to provide Keene with suitable work, it would be disqualified from exercising its right to reduce the benefits paid to Keene. *Id.*

5. We find no error in the Commission's finding that Keene "refused" the offer within the meaning of section 66–A when, after initially accepting the communications operator position, she left the job after a few days.