1998 ME 101

William THOMPSON

v.

CLAW ISLAND FOODS and Commercial
Union Insurance Co.

Supreme Judicial Court of Maine.

Argued Feb. 4, 1998.
Decided May 8, 1998.

Alan M. Harris (orally), Bornstein & Hovermale, Bagor, for employee.

Richard F. Van Antwerp, Thomas R. Kelly (orally), Robinson, Kriger & McCallum, Portland, for employer.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] William Thompson appeals from a decision of the Workers' Compensation Board denying his petition for review and denying him continuing incapacity benefits based on his refusal of an offer of reinstatement employment by Claw Island Foods, his pre-injury employer. Thompson contends that because he had moved away from the site of his pre-injury employment, the offer of employment at that site was not an offer of reasonable employment. Alternatively, Thompson contends that his refusal of the offer was for good and reasonable cause. Because the Board failed to apply the correct legal standard, we vacate the decision.

[¶ 2] Thompson suffered a work-related injury to his back on January 12, 1993, while employed at Claw Island Foods on Vinalhaven Island. He left work due to the injury and began receiving total benefits. His request for light-duty employment was denied because no light-duty work was available,

and in April 1993 he was informed that his former position had been eliminated. The Board found that:

> After receiving notice that his job had been eliminated [for economic reasons], Employee modified [his pending housing] loan application so that his family could move to the mainland. On November 1, 1993, Employee moved to temporary lodging on the mainland, and then settled into a new home in Searsport. Employee estimated that Searsport is a 45–60 minute drive from the Vinalhaven ferry terminal, and that the ferry ride to the island takes just over one hour.

[¶ 3] Within a month of Thompson's move to the mainland, Claw Island mailed him a written offer of seasonal reinstatement work extending from the months of July to January. Claw Island offered to reimburse Thompson for his round-trip ferry travel to and from the island. Thompson refused the offer, and Claw Island unilaterally terminated his benefits based on that refusal. *See* 39–A M.R.S.A. § 205(9)(B)(1) (Supp.1997). Thompson filed a petition for review challenging the termination. Although the Board declined the employer's invitation to apply 39–A M.R.S.A. § 218(5) (Supp.1997), it nonetheless denied Thompson's petition, concluding that the termination of benefits was permissible pursuant to 39–A M.R.S.A. § 214(1)(A) (Supp.1997). Subsequently, the Board denied Thompson's motion for additional findings of fact, and we granted his petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1997).

## I. 39–A M.R.S.A. § 218

[¶ 4] Claw Island contends that, even if it were not entitled to terminate benefits pursuant to subsection 214(1)(A), the termination was permissible pursuant to 39–A M.R.S.A. § 218(5). We disagree. Section 218 provides, in pertinent part:

### § 218. Worker reinstatement rights

Upon petition of an injured employee, the board may require, after hearing, that the employee be reinstated as required by this section.

. . . .

**5. Failure to comply.** The employer's failure to comply with the obligations under this section disqualifies the employer ... from exercising any right it may otherwise have to reduce or terminate the employee's benefits under this Act. The disqualification continues as long as the employer fails to offer reinstatement or until the employee accepts other employment.

If any injured employee refuses to accept an offer of reinstatement for a position suitable to the employee's physical condition, the employee is considered to have voluntarily withdrawn from the work force and is no longer entitled to any wage loss benefits under this Act during the period of refusal.

39–A M.R.S.A. § 218. Pursuant to the introductory language, "[u]pon the petition of an injured employee," subsection 218(5) applies only in the context of a petition for reinstatement. This interpretation is consistent with the heading of subsection (5), "Failure to comply," indicating that the subsection only applies in the event of an employer or employee's actual failure to comply with the obligations of formal reinstatement procedure after a petition for reinstatement has been filed. *See* 39–A M.R.S.A. § 218.

[¶ 5] Contrary to Claw Island's contention, this interpretation of the plain language of section 218 is not inconsistent with our interpretation of former 39 M.R.S.A. § 66–A. In *Keene v. Fairchild Co.*, 593 A.2d 655, 657–58 (Me.1991), we concluded that, pursuant to former 39 M.R.S.A. § 66–A, prior to its amendment by P.L.1987, ch. 559, § B(35), the employer could discontinue benefits after the employee refused an offer of reinstatement, even in the absence of a petition for reinstatement. *See Keene*, 593 A.2d at 656–57. Unlike section 218, however, the reinstatement provision at issue in *Keene* did not include the defining language, "[u]pon the petition of an injured employee." [1] This lan-

---

1. The opening sentence of the applicable statute in *Keene* provided: "If any injured employee refuses to accept an offer of suitable work, the employer or insurer may, in addition to exercising any other rights it may have, file a petition

guage was not added to former section 66–A until 1987. *See* P.L.1987, ch. 559, § B(35), *repealed by* P.L.1991, ch. 885, § A–7. We have not interpreted former section 66–A after the introduction of that language in 1987.[2]

[¶ 6] Because section 218 unequivocally applies only "upon petition of an injured employee," the Board did not err by concluding that because Thompson did not file a petition for reinstatement, subsection 218(5) does not apply and the issue is governed exclusively by section 214.[3]

### II.   39–A M.R.S.A. § 214(1)(A)

[¶ 7] In applying section 214, the Board is required to undertake a two-part analysis, reviewing both the employer's actions in making the job offer and the employee's actions in declining that offer. Section 214 provides, in pertinent part:

§ 214.   **Determination of partial incapacity**

1.   **Benefit determination.** While the incapacity is partial, the employer shall pay the injured employee benefits as follows.

A.   If an employee receives a bona fide offer of reasonable employment from the previous employer or another employer or through the Bureau of Employment Services and the employee refuses that employment without good and reasonable cause, the employee is considered to have voluntarily withdrawn from the work force and is no longer entitled to any wage loss benefits under this Act during the period of the refusal.

. . . .

5.   **Reasonable employment defined.** 'Reasonable employment,' as used in this section, means any work that is within the employee's capacity to perform that poses no clear and proximate threat to the employee's health and safety and that is within a reasonable distance from that employee's residence. The employee's capacity to perform may not be limited to jobs in work suitable to the employee's qualification and training.

39–A M.R.S.A. § 214. Pursuant to these provisions, when confronted with an employee's decision to decline a job offer, from whatever source, the Board must determine first, whether the offer was a "bona fide offer of reasonable employment" and second, whether the employee refused that offer without "good and reasonable cause."

### A.   Bona Fide Offer of Reasonable Employment

[¶ 8] When the Board is called upon to determine whether the employee received a bona fide offer of reasonable employment, it must consider each of the factors set out in subsection 214(5), that is, whether the work falls within the employee's work capacity, whether it poses a threat to the employee's health and safety, and whether it is within a reasonable distance of the employee's residence. Because subsection 214(5) gives no guidance as to whether "employee's residence" refers to the residence at the time of the injury or at the time of the job offer, the Board must first determine which residence is controlling before deciding whether the offered position is within a reasonable distance of that residence.

[¶ 9] We have not had occasion to consider the reference point for determining the employee's residence for purposes of section 214. The Legislature intended, whenever

---

for a reduction of benefits." 39 M.R.S.A. § 66–A, *amended by* P.L.1987, ch. 559, § B(35).

**2.** Our conclusion is also consistent with the Legislature's treatment of the predecessor to section 214(1), former 39 M.R.S.A. § 100. Section 100 was amended in 1987 to permit an employer to discontinue benefits upon the filing of a petition for review when an employee refuses an offer of work. *See* P.L.1987, ch. 559, § B–41, *codified as* 39 M.R.S.A. § 100(4)(D)(1), *amended by* P.L. 1991, ch. 615, § D–21, *repealed by* P.L.1991, ch. 885, § A–7. The amendment of section 66–A in

1987 to include the "upon the petition of the injured employee" language, together with the simultaneous amendment of section 100, evidenced a legislative intent to limit the application of 66–A to situations when an employee files for a petition for reinstatement, and to apply section 100 when an employee refuses an offer in the more general context.

**3.** Because section 218(5) does not apply, we need not determine in this case whether subsection 218(5) provides a different standard with regard to offers of reinstatement than subsection 214(1).

possible, for such issues to be addressed to the Board;[4] however, while ambiguities in the Act may be addressed by the Board, either through rulemaking, *see* 39–A M.R.S.A. § 152(2) (Supp.1997), or through the exercise of its appellate review authority, *see* 39–A M.R.S.A. § 320 (Supp.1997), the full Board has not had an opportunity to address this issue. Therefore, to foster consistency in the application of section 214, the Board should consider the following factors in determining the employee's residence for purposes of section 214.

[¶ 10]   Both the employer and the employee ask this Court to define "employee's residence" for purposes of subsection 214(5) to have a single meaning, regardless of the facts of an individual case. The employee asks the Court to define residence as his residence at the time of the job offer; the employer suggests that we define it as his residence at the time of the injury. Although we recognize the ease of application that may result from a single judicially created definition of residence, we conclude that such a definition is neither contemplated by nor consistent with the language of the Act.

[¶ 11]   A definition of residence that refers always to the residence at the time of the offer would effectively allow any employee to move away from the employer's work site and thereby render all job offers from that employer unreasonable. Similarly, a definition of residence that refers always to the residence at the time of the injury would result in the certain loss of benefits by any employee who relocates away from the employer's work site if a job were offered at that work site, regardless of the employee's employment related motivation in relocating. Either result is inconsistent with the goals of the Act. It is incumbent on the Board, therefore, to determine which residence is applicable from the facts before it in each case.

[¶ 12]   In making such determinations the Board should consider all factors relevant to the employee's move. When the employment is offered by the enterprise at which the employee worked at the time of injury, and the position offered is located at the place of employment at the time of the injury, the Board may determine that the "residence" referenced by subsection 214(5) is the employee's residence at the time of that injury unless it determines that the employee moved for reasons consistent with the goals of the Act. Among the facts that will be relevant to the Board's determination are the employee's motivation for the move, the length of time between the injury and the offer, and whether a reasonable employee would have understood that an offer of reinstatement at that site was possible. In considering the employee's motivation for moving, the Board should consider whether a primary motivation for the move was the reasonable expectation that the move would increase job opportunities, increase opportunities for productive rehabilitation, facilitate a return to the job market, or advance some other compelling purpose consistent with the goals of the Act.

[¶ 13]   As we have previously recognized, section 214 is based on Michigan law. *See* L.D. 2364, Statement of Fact (115th Legis.1991); *Bureau,* 678 A.2d at 589–90. Because the Michigan statute is based on the Michigan common law "favored work" doctrine, *see Pulver v. Dundee Cement Co.,* 445 Mich. 68, 515 N.W.2d 728, 735 (1994), and because there is no evidence that our Legislature intended to adopt Michigan common law, we have not followed decisions of the Michigan courts in our interpretation of subsection 214(1)(A). *See Bureau,* 678 A.2d at 589–90. Because the statutory language of subsection 214(1) is virtually identical to the Michigan statute,[5] however, we may still look to decisions of Michigan courts for guidance when the courts have applied an analysis that reflects the same policy and language as Maine's statute.

[¶ 14]   The Michigan Supreme Court has not yet directly addressed the reference point for the employee's residence in determining whether an offer of employment was reasonable; however, a recent decision of the Michigan Court of Appeals is on point. *See*

---

**4.** *See Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 589–90 n. 2 (Me.1996).

**5.** Mich.Comp.Laws Ann. § 418.301(5)(a), (9) (West 1997).

*Jones–Jennings v. Hutzel Hosp.*, 223 Mich. App. 94, 565 N.W.2d 680, 686–87 (1997). In that case, the employee married after her injury and moved 142 miles away from her employer's location. After her relocation, she was offered suitable light-duty work by her pre-injury employer. The magistrate concluded that although the employee had not yet obtained post-injury employment at the time of the hearing, the Michigan employer had not offered the employee "reasonable employment" because it was not within a reasonable distance from her residence *at the time of the offer.* The Appellate Division reversed, holding that residence referred to the employee's residence *at the time of the injury.* The Michigan Court of Appeals, however, reversed the Appellate Division, concluding that, as a matter of common usage, the term "residence" refers to "the one place the employee actually and permanently intends to reside, *at the time the offer is made." Id.* 565 N.W.2d at 686 (emphasis added).

■ [¶ 15] This debate within the Michigan system is illustrative of the difficulties inherent in overlaying a single definition of residence on the language of statutes that are silent on the point. We decline to accept the hard and fast rule adopted in *Jones–Jennings.* Rather, we rely on the sound discretion of the Board as factfinder to determine whether the residence relevant to the job offer at hand is the residence of the employee at the time of injury or at the time of the offer.

### B.   Good and Reasonable Cause

[¶ 16] If the Board determines that a bona fide offer of "reasonable employment" has been made, it must then determine whether the employee declined that offer for "good and reasonable cause." As always, the Board must consider all facts relevant to the employee's decision to decline the job offer. When the employee has relocated, the Board may again consider the reasons for the relocation.

[¶ 17] The Michigan Supreme Court has considered this separate issue on several occasions and its analysis in this area is instructive. One important Michigan case,

*Bower v. Whitehall Leather Co.*, 412 Mich. 172, 312 N.W.2d 640 (1981), decided prior to the enactment of section 418.301(5)(a), involved an employee who declined a reinstatement offer of light duty work because he had found post-injury employment in Florida. *See Bower*, 312 N.W.2d at 642–43. The court held that the employee was justified in refusing the favored work offer after accepting work in Florida, stating that "initiative and industriousness, should be encouraged," and that "[t]o deny benefits in the instant circumstances not only would punish this employee for finding and holding substitute work, but also would severely undercut the rehabilitative and mitigative purposes of the Act." *Id.* 312 N.W.2d at 648

[¶ 18] In a more recent decision, *Pulver v. Dundee Cement Co.*, 445 Mich. 68, 515 N.W.2d 728 (1994), the court held that the test for determining "good and reasonable cause" may require consideration of the following factors:

> (1) the timing of the offer, (2) if the employee has moved, the reasons for moving, (3) the diligence of the employee in trying to return to work, (4) whether the employee has actually returned to work with some other employer and, (5) whether the effort, risk, sacrifice or expense is such that a reasonable person would not accept the offer.

*Id.* 515 N.W.2d at 735 (footnote omitted). The court noted further that "[a]n attempt to avoid a bona fide offer of reasonable employment by moving would never constitute good and reasonable cause." *Id.* at 735 n. 12.

■ [¶ 19] Although the factors articulated by the *Pulver* court are not intended to be exhaustive or conclusive, they represent a sound general framework for decision making when the employee has refused an offer of reasonable employment. Those factors, however, are merely examples of the facts to be considered by the Board. "Not every personal consideration will constitute good and reasonable cause entitling an employee to continued benefits after a refusal of an offer of reasonable employment. It is left to the sound discretion of the factfinder to carefully examine the facts and circumstances of

each case to determine what is good and reasonable cause in any given situation." *Id.* at 735.

### III. The Board's Decision

[¶ 20] The Board made the following findings in determining that Claw Island would be allowed to cease paying benefits to Thompson.

> While Employee was free to choose where he wanted to live, this choice does not negate Employer's responsibility to try to return Employee to the work force. Neither should Employee's choice to relocate render Employer's offer of suitable employment 'unsuitable[,]' simply because Employee has chosen to move too far away to commute to the job.

Based on those and other findings, the Board concluded that the employer made a bona fide offer of reasonable employment and that the employee refused to accept the offer without good and reasonable cause. These conclusions indicate an erroneous understanding that the employee's residence is necessarily determined with reference to the time of the injury for purposes of determining whether the offer of reinstatement was reasonable. Because we have today rejected that rigid interpretation of section 214(1), we conclude that the Board erred in construing the language of section 214. Moreover, the Board failed to undertake a full analysis of the employee's reasons for refusing the offer of reinstatement. We therefore vacate the decision and remand the matter for further consideration consistent with the two-part analysis set out here. The Board may, in its sole discretion, accept additional evidence into the record.

The entry is:

The decision of the Workers' Compensation Board vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this decision.

