1999 ME 76

**Chester LADD**

v.

**GRINNELL CORPORATION**

**and**

**Hanover Insurance Co.**

Supreme Judicial Court of Maine.

Argued May 4, 1999.

Decided May 17, 1999.

Jeffrey L. Cohen (orally) McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, for employee.

Stephen W. Moriarty (orally), Norman, Hanson & DeTroy, LLC, Portland, for employer.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Chester Ladd petitions from a decision of the Workers' Compensation Board denying his petition for restoration. The Hearing Officer concluded that the employee's unwillingness to cross a union picket line could not, as a matter of law, constitute "good and reasonable cause" for a refusal of an offer of post-injury employment pursuant to 39–A M.R.S.A. § 214(1) (Supp.1998). We disagree, and remand for a determination of the reasonableness of Ladd's refusal in light of the facts specific to this case.

[¶ 2] Ladd is a thirty-year member of a national Sprinkler Fitters' Union. Ladd suffered a work-related wrist-injury on March 9, 1993, while employed by the Grinnell Corp. as a sprinkler fitter. Ladd was given light-duty work following his injury and received voluntary payments of benefits until September 1993 when he returned to full-time, light-duty employment, earning his pre-injury wage. In April 1994, his union called a nationwide strike. Ladd participated in the strike and refused to return to work. Grinnell advertised nationally for permanent replacement workers and has had jobs available for sprinkler fitters since the beginning of the strike.

[¶ 3] Ladd's injury prevented him from returning to his former line of work as a sprinkler fitter for other employers. He did, however, obtain a seasonal job as a heavy equipment operator shortly after going out on strike. Ladd has continued in this employment on a seasonal basis, and, as of the date of the hearing in December 1996, had

also obtained temporary employment for the winter months of 1996–1997 doing light assembly work.

[¶ 4] In February 1995, roughly ten months after the strike began, Grinnell made a written offer to Ladd of nonunion reinstatement employment in his former light-duty position. Ladd was the only striking employee to receive such an offer. Ladd refused the offer, in part, out of loyalty to his labor union. Ladd also testified that he would suffer financial repercussions by breaking the strike, which would include the loss of, or at least a diminution in, his union health insurance coverage and pension benefits.

[¶ 5] Ladd filed a petition for restoration seeking partial incapacity benefits. The Hearing Officer concluded that the employee's decision to strike did not constitute a withdrawal from the work-force requiring an automatic termination of benefits,[1] and that the employer's written offer in February 1995 was a bona fide offer of reasonable employment pursuant to section 214(1). Relying, in part, on Michigan precedent, *see, e.g., Pigue v. General Motors Corp., Oldsmobile Div.*, 317 Mich. 311, 26 N.W.2d 900, 903–04 (1947), the Hearing Officer concluded that the employee's unwillingness to cross a picket line could not, as a matter of law, constitute good and reasonable cause for refusing the employer's offer. Examining the legislative history of section 214, the Hearing Officer stated: "There is no indication that the Maine Legislature intended to create an exception to an employee's obligation to accept a bona fide offer of reasonable employment based on an employee's union membership." We granted the employee's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1998).

[¶ 6] Section 214 provides, in pertinent part:

### § 214. Determination of partial incapacity

**1. Benefit determination.** While the incapacity is partial, the employer shall pay the injured employee benefits as follows.

**A.** If an employee receives a bona fide offer of reasonable employment from the previous employer or another employer or through the Bureau of Employment Services and the employee refuses that employment without good and reasonable cause, the employee is considered to have voluntarily withdrawn from the work force and is no longer entitled to any wage loss benefits under this Act during the period of the refusal.

. . . .

**5. Reasonable employment defined.** "Reasonable employment," as used in this section, means any work that is within the employee's capacity to perform that poses no clear and proximate threat to the employee's health and safety and that is within a reasonable distance from that employee's residence. The employee's capacity to perform may not be limited to jobs in work suitable to the employee's qualification and training.

39–A M.R.S.A. § 214.

[¶ 7] We recently interpreted subsection 214(1) in *Thompson v. Claw Island Foods*, 1998 ME 101, ¶¶ 7–19, 713 A.2d 316, 318–21. As we stated in Thompson, section 214(1) requires a determination, first, of the reasonableness of the offer of employment, and, second, of the reasonableness of the refusal. 1998 ME 101, ¶ 7, 713 A.2d at 318. While the term "reasonable employment" is defined in the statute, the reasonableness of the refusal is left necessarily broad. We stated: "As always, the Board must consider all facts relevant to the employee's decision to decline the job offer." *Id.* at ¶ 16, 713 A.2d at 320 (emphasis added).

[¶ 8] Section 214 is based on Michigan law, M.C.L.A. § 418.301(5)(a) & (9) (1998), containing virtually identical language. *Bureau v. Staffing Network, Inc.*,

---

1. The Hearing Officer relied on our decision in *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 589–90 (Me.1996), in which we held, in part, that an employee's termination for cause does not justify a termination of benefits pursuant to sub-section 214(1). *Bureau* did not involve a striking employee and is therefore distinguishable. The employer has not appealed from this aspect of the Board's decision.

678 A.2d 583, 589–90 (Me.1996); L.D. 2464, Statement of Fact (115th Legis.1991) ("[s]ection 214 is derived from Michigan § 418.301 and determines the amount of partial benefits that are due."). As we stated in *Thompson*, in cases when an employee relocates after an injury, the factors listed by the Michigan Supreme Court in *Pulver v. Dundee Cement Co.*, 445 Mich. 68, 515 N.W.2d 728, 735 (1994), may be helpful to the determination of the reasonableness of the refusal. 1998 ME 101, at ¶ 18, 713 A.2d at 320. The relevant factors include, but are not limited to:

> (1) the timing of the offer, (2) if the employee has moved, the reasons for moving, (3) the diligence of the employee in trying to return to work, (4) whether the employee has actually returned to work with some other employer and, (5) whether the effort, risk, sacrifice or expense is such that a reasonable person would not accept the offer.

*Id.* (quoting *Pulver*, 515 N.W.2d at 735) (footnote omitted). As we stressed in *Thompson*, and the Michigan Court also made clear in *Pulver*:

> 'Not every personal consideration will constitute good and reasonable cause entitling an employee to continued benefits after a refusal of an offer of reasonable employment. It is left to the sound discretion of the factfinder to carefully examine the facts and circumstances of each case to determine what is good and reasonable cause in any given situation.'

*Id.* at ¶ 19, 713 A.2d at 320–21 (quoting *Pulver*, 515 N.W.2d at 735).

[¶ 9] Although Michigan courts have held that the refusal of union employees to cross a picket line cannot, as a matter of law, constitute "good and reasonable cause" for refusing an offer of employment, *see, e.g., Nederhood v. Cadillac Malleable Iron Co.*, 445 Mich. 234, 518 N.W.2d 390 (1994); *Bower v. Whitehall Leather Co.*, 412 Mich. 172, 312 N.W.2d 640, 643–44 (1981); *Pigue*, 26 N.W.2d at 903–04, the Michigan rule is based primarily on Michigan's common law "favored work" doctrine, and less on statutory language. As we stated in *Bureau*, 678 A.2d at 589–90, "the legislative history [of subsec-

tion 214(1) ] does not suggest that the Maine Legislature intended to adopt Michigan's common law." Accordingly, we may decline to follow decisions of Michigan courts interpreting similar statutory language when those interpretations are based on Michigan common law.

[¶ 10] We agree with the Hearing Officer's observation that there is no legislative history to suggest that our Legislature intended to create an exception for striking workers to the general duty of an employee to accept offers of employment. We do not, however, find this fact dispositive. On the contrary, in our view, it is more telling that nothing in the statute *limits* the type of factors that may be considered in the determination of reasonableness. The phrase "good and reasonable cause" is broad, and, we assume, intentionally so, in order to permit the consideration of a broad spectrum of factors that may arise in the factual context of individual cases.

■ [¶ 11] Section 214(1), therefore, requires careful consideration of all the factors relevant to a person's decision to refuse an offer. The five nonexclusive factors cited in *Thompson* may provide a framework for analyzing the issue, but the Board is not limited to consideration of those factors. *See Thompson*, 1998 ME 101, at ¶ 18, 713 A.2d at 320. In the case of a striking employee, additional factors may also include, but are not limited to (1) the bona fides of the employee's decision not to cross a picket line, considering, among other things, the length of time that the employee has belonged to the union, and the employee's position in the union; (2) the possibility of significant union-imposed penalties, e.g., the loss of union benefits; (3) the reasonable likelihood of violence, retaliation or other serious repercussions for crossing a picket line; and (4) the willingness of the employee to find work through other employer outside the strike. We do not endeavor to provide an exhaustive list of factors that may be applicable in the situation of a strike, or to anticipate all possible ramifications of crossing a picket line that might weigh in a Hearing Officer's analysis of reasonableness. Each case must be decided according to its own unique facts, and

should turn, ultimately, on "whether the effort, risk, sacrifice or expense is such that a reasonable person would not accept the offer." *Id.* (quoting *Pulver*, 515 N.W.2d at 735).

[¶ 12] The Hearing Officer in the present case erred in suggesting that an employee's refusal to cross a picket line could never, as a matter of law, constitute good and reasonable cause to refuse an offer of reinstatement. Accordingly, we remand to the Board for consideration of the reasonableness of the employee's refusal in light of the unique facts of this case.

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.