1999 ME 118

**Denise LOUD**

v.

**KEZAR FALLS WOOLEN CO. et al.**

Supreme Judicial Court of Maine.

Argued June 9, 1999.
Decided July 27, 1999.

Henri A. Benoit II (orally), Law Offices of Joseph L. Bornstein, Portland, for employee.

Alison A. Denham (orally), Douglas, Denham, Rodgers & Hood, Portland, for Kezar Falls Woolen and Travelers.

Elizabeth Eddy Griffin, Allan M. Muir, Portland, did not file brief for Robinson Manufacturing, Zurich Commercial and Maine Bonding.

Pierce Atwood, Portland, for Robinson Manufacturing, Zurich Commercial and Maine Bonding.

Michael E. Saucier, Thompson & Bowie, Portland, did not file brief for Aetna.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

WATHEN, C.J.

[¶ 1] The employer, Kezar Falls Woolen Co., appeals from a decision of the Workers' Compensation Board partially granting its petition for forfeiture. The Board concluded that although the employee's refusal of an offer of reinstatement employment resulted in a forfeiture of benefits, the employee's subsequent inquiries into job opportunities, and further layoffs at Kezar Falls, ended "the period of the refusal" pursuant to 39–A M.R.S.A. § 214(1)(A) (Supp.1998). We disagree and vacate the decision.

[¶ 2] The employee, Denise Loud, suffered a work-related injury to her low-back on August 1, 1991, while employed by Kezar Falls as a "spooler." The workers' compensation insurer at the time of her 1991 injury was Travelers Insurance Co. Shortly after the 1991 injury, Loud transferred to less strenuous work as a "spinner." Loud suffered a second work-related injury on August 16, 1993, while Kezar Falls was insured by Maine Bonding & Casualty. After a period of lost time due to the injury, Loud was released to full-duty work as a spinner in March, 1994.

[¶ 3] Loud was laid off from her employment in September 1994 due to an economic shut-down of the mill. Loud was recalled to work by Kezar Falls in February 1995, but refused the offer. Loud eventually obtained part-time work at a convenience store, where her former supervisor at Kezar Falls was an occasional customer. While employed at the convenience store, Loud asked her supervisor whether Kezar Falls was "still hiring" and the supervisor answered in the negative. There had been at least one lay-off of spinner employees at Kezar Falls since the reinstatement offer was made to Loud in February 1995.

[¶ 4] In 1995 Loud filed petitions seeking benefits for the 1991 and 1993 injuries, and the employer, through its insurer, Maine

Bonding, filed a petition for forfeiture. The Board granted the employee's petitions, concluding that her ongoing incapacity was the result of both the 1991 and 1993 injuries. With respect to the petition for forfeiture, the Board concluded that the employee's refusal of an offer of employment in 1995 resulted in forfeiture of benefits pursuant to 39–A M.R.S.A. § 214(1)(A). The Board also concluded, however, that the inquiry posed by the employee at the convenience store, and the further layoffs that occurred at Kezar Falls after the offer was made, ended the period of refusal. The Board stated:

Ms. Loud testified persuasively that she had inquired about returning to work at the mill since going to work at the variety store and had been told no work was available. The employer did not refute this testimony. In fact, [a Kezar Falls employee] testified that there had been subsequent layoffs from the same department since the recall offer was made to Ms. Loud in February of 1995.

I find Ms. Loud's inquiry, and the lack of work available, adequate to obviate her former refusal of a job offer. Thus I conclude that as of August of 1996, Ms. Loud was not barred from the receipt of partial incapacity benefits by virtue of Section 214(1)(A).

[¶ 5] The two insurers, Travelers and Maine Bonding, filed a joint petition for appellate review challenging the Board's conclusion that the employee's forfeiture had terminated. We granted the petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1998).[1]

Section 214 provides, in pertinent part:

§ 214. **Determination of partial incapacity**

1. **Benefit determination.** While the incapacity is partial, the employer shall pay the injured employee benefits as follows.

A. If an employee receives a bona fide offer of reasonable employment from the previous employer or another employer or through the Bureau of Employment Services and the employee refuses that employment without good and reasonable cause, the employee is considered to have voluntarily withdrawn from the work force and is no longer entitled to any wage loss benefits under this Act *during the period of the refusal.*

. . . .

5. **Reasonable employment defined.** "Reasonable employment," as used in this section, means any work that is within the employee's capacity to perform that poses no clear and proximate threat to the employee's health and safety and that is within a reasonable distance from that employee's residence. The employee's capacity to perform may not be limited to jobs in work suitable to the employee's qualification and training.

39–A M.R.S.A. § 214 (emphasis added).

[¶ 6] Subsection 214(1) is designed to provide an opportunity for employers to mitigate workers' compensation benefits by offering injured employees reinstatement employment. The statute is also intended to encourage injured employees to return to work. Accordingly, once the employer makes a bona fide offer of reasonable employment, the employee is subject to a reciprocal obligation to accept that offer, absent good and reasonable cause for refusal. The phrase "during the

1. In February 1999, the second insurer, Maine Bonding, settled its liability with Loud for $10,000, and has not participated in this appeal. Loud contends in her brief that her subsequent settlement with Maine Bonding ended the liability of Travelers pursuant to this decision, and, therefore, renders this appeal moot. We disagree. As Loud conceded

in oral argument, the settlement of one insurer's liability in a successive injury case does not remove the liability of the remaining insurer. *See, e.g., LaPointe v. United Eng'rs and Constructors,* 680 A.2d 458, 463 (Me.1996) (Maine employer entitled to a credit for a duplicative recovery after settlement of another insurer's liability in another state).

period of the refusal" establishes that the termination of benefits resulting from a refusal of work need not be permanent. As a matter of common usage, a period of refusal begins when an employee rejects an offer of employment, and ends when the employee communicates to the employer a willingness to accept the offer previously rejected.[2]

[¶ 7] We agree with Kezar Falls that the record in this case does not support a finding that the period of refusal has ended. Loud spoke informally and in generalities with her former supervisor while he was a customer in the store in which she was working. Loud never contacted her employer at its place of business or at any other location where applications for work are customarily made. Neither in person, in writing, nor by telephone, did she request a job or accept the offer previously rejected. Although the method of acceptance may vary according to the circumstances of a particular case or employment, the mitigative purpose of the statute requires, at a minimum, that the employee take some affirmative step to communicate to the employer a willingness to return to employment so that suitable work may be provided. We agree with the employer that, under the circumstances of this case, Loud failed to communicate to the employer her willingness to return to work.

[¶ 8] Loud contends, however, that even if her inquiries did not end her period of refusal, the Board's findings of subsequent layoffs were sufficient to support a finding that the offer of employment had been withdrawn. We disagree. This is not the case of an employer who has gone out of business following an offer, and is, therefore, no longer able to provide reinstatement employment. *See, e.g., Derr v.*

*Murphy Motors Freight Lines*, 452 Mich. 375, 550 N.W.2d 759, 765 (1996); *Hartsell v. Richmond Lumber Co.*, 154 Mich.App. 523, 398 N.W.2d 456, 461 (1986). A finding that some employees have been laid off following the offer of reinstatement does not mean, necessarily, that the offer to Loud was withdrawn, or that Loud would have been laid off if she had accepted the offer. The Act provides an incentive for employers to find or create work for injured employees following an injury, and it is conceivable that Kezar Falls, given the opportunity, might have continued to employ Loud even after other "spinner" employees had been laid off.

[¶ 9] Loud next contends that her actual post-injury earnings and good faith work-search rebuts the subsection 214(1)(A) "presumption" that she has "voluntarily withdrawn from the work force." We implicitly rejected this interpretation in *Thompson v. Claw Island Foods*, 1998 ME 101, ¶ 18, 713 A.2d 316, 320. Relying on decisions of the Michigan courts,[3] we stated that an employee's acceptance of post-injury employment is only one of the factors to be considered in determining the reasonableness of an employee's refusal. *See also Ladd v. Grinnell Corp.*, 1999 ME 76, ¶ 8, 728 A.2d 1275, 1278. Moreover, the mitigative purpose of subsection 214(1)(A) would be defeated if an employee could avoid forfeiture by obtaining under-employment at a substantially reduced wage.

[¶ 10] Finally, Loud contends that Kezar Falls is not entitled to suspend benefits pursuant to section 214, because section 214 does not apply. Loud relies on subsection 201(6), providing:

> 6. **Prior work-related injuries.** If an employee suffers a work-related inju-

---

2. Or when the employee can show good and reasonable cause to justify continued refusal of the offer, e.g., when the employee obtains higher paying reinstatement work elsewhere.

3. Subsection 214 is based on Michigan law. The Statement of Fact provides: "Section 214

is derived from Michigan § 418.301 and determines the amount of partial benefits that are due." Statement of Fact, L.D. 2364 (115th Legis.1991). *See Also Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 589–90 (Me. 1996).

ry that aggravates, accelerates or combines with the effects of a work-related injury that occurred prior to January 1, 1993 for which compensation is still payable under the law in effect on the date of that prior injury, the employee's rights and benefits for the portion of the resulting disability that is attributable to the prior injury must be determined by the law in effect at the time of the prior injury.

P.L.1998, ch. 647 (codified at 39–A M.R.S.A. § 201(6) (Supp.1998) (effective June 30, 1998)).

[¶ 11] It is not necessary to determine the effect of subsection 201(6) to the liabilities of the parties in this appeal, because we agree with Travelers that subsection 201(6) does not apply. The proceeding in this case was pending on the effective date of subsection 201(6). 1 M.R.S.A. § 302 (1989) provides: "Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." Because we find no clear and unequivocal language suggesting an intent to apply subsection 201(6) to pending proceedings, we conclude that it does not apply to this case. *See Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 627–28 (Me. 1994); *Tompkins v. Wade & Searway Constr. Corp.*, 612 A.2d 874, 879 (Me. 1992); *DeMello v. Department of Envtl. Protection*, 611 A.2d 985, 986 (Me.1992). Accordingly, Loud's entitlement to benefits is governed by section 214. *See Ray v. Carland Constr., Inc.*, 1997 ME 206, ¶ 4, 703 A.2d 648, 650 (when two injuries contribute to a single incapacitating condition, and the latter injury occurs after the effective date of title 39–A, i.e., January 1, 1993, the employee's entitlement to benefits is governed exclusively by title 39–A).

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this opinion.

