2001 ME 146

**Stephanie HOLT**

v.

**SCHOOL ADMINISTRATIVE DISTRICT NO. 6 et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 14, 2001.
Decided: Oct. 22, 2001.

Alexander F. McCann, Esq., James J. MacAdam, Esq., MacAdam McCann, P.A., Portland, for employee.

Thomas R. Kelly, Esq. (orally), John M. McCallum, Esq., Darby C. Urey, Esq., Robinson Kriger & McCallum, Portland, for defendant.

Panel: WATHEN, C.J.,* CLIFFORD and RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] School Administrative District No. 6 and its workers' compensation insurer, Maine School Management Association, (collectively "SAD 6"), appeal from the decision of a Hearing Officer of the Workers' Compensation Board awarding Stephanie Holt partial incapacity compensation. Because Holt's voluntary resignation of reasonable post-injury employment without good and reasonable cause constituted a refusal of an offer of bona fide employment pursuant to 39–A M.R.S.A. § 214(1)(A) (2001), we vacate the decision of the Hearing Officer.

[¶ 2] The Hearing Officer found the following facts, which the parties do not contest: Holt, who was the head of the English Department for sixteen of the eighteen years she taught at Bonny Eagle High School, suffered a compensable injury to her right knee on June 2, 1994. Holt continued her employment with SAD 6 following her injury, and the employer made some modifications to the workplace to accommodate her work restrictions. Holt began a paid administrative leave in June 1996 for reasons unrelated to her injury, and voluntarily resigned in October 1996.

[¶ 3] In 1998 Holt petitioned the Board for an award of compensation for her 1994 injury. The Hearing Officer granted Holt's petition and awarded her partial incapacity benefits based on an imputed post-injury capacity to work forty hours a week earning $8.00 an hour. *See* 39–A M.R.S.A. §§ 213, 214 (2001); *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 588–89 (Me.1996). The Hearing Officer rejected the employer's contention that Holt's voluntary resignation of her post-injury employment constituted a refusal of a bona fide offer of employment pursuant to section 214(1)(A). In response to the employer's motion for further findings of fact and conclusions of law, the Hearing Officer stated that "[section] 214 of the Act does not apply where no compensation is being paid." We granted the employer's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).

■ Section 214 provides, in pertinent part:

§ 214. **Determination of partial incapacity**

1. **Benefit determination.** While the incapacity is partial, the employer shall pay the injured employee benefits as follows.

A. If an employee receives a bona fide offer of reasonable employment from the previous employer or another employer or through the Bureau of Employment Services and the employee refuses that employment without good and reasonable cause, the employee is considered to have voluntarily withdrawn from the work force and is no longer entitled to any wage loss benefits under this Act during the period of the refusal.

. . . .

5. **Reasonable employment defined.** "Reasonable employment," as used in this section, means any work

---

* WATHEN, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

that is within the employee's capacity to perform that poses no clear and proximate threat to the employee's health and safety and that is within a reasonable distance from that employee's residence. The employee's capacity to perform may not be limited to jobs in work suitable to the employee's qualification and training.

39–A M.R.S.A. §§ 214(1), (5) (2001). As we have stated, the purpose of section 214(1)(A) is

to provide an opportunity for employers to mitigate workers' compensation benefits by offering injured employees reinstatement employment. The statute is also intended to encourage injured employees to return to work. Accordingly, once the employer makes a bona fide offer of reasonable employment, the employee is subject to a reciprocal obligation to accept that offer, absent good and reasonable cause for refusal.

*Loud v. Kezar Falls Woolen Co.*, 1999 ME 118, ¶ 6, 735 A.2d 965, 967.

■ [¶ 4] We first must consider whether the Hearing Officer erred by concluding that section 214(1)(A) is only applicable when an employer has commenced payment of incapacity benefits. Holt argues that the Hearing Officer's interpretation is supported, in part, by the language of section 214(1)(A) providing that an employee who has refused a bona fide offer without good and reasonable cause "is *no longer* entitled to any wage loss benefits under this Act during the period of the refusal." (emphasis added).

[¶ 5] The key language in section 214(1)(A) is not the phrase "no longer," but the term "*entitled.*" Employees may be *entitled* to benefits prior to their actual *receipt* of benefits. The Act suggests that the Legislature knew the difference between an employee's "entitlement" to benefits and the "payment" or "receipt" of benefits. For example, 39–A M.R.S.A. § 201 (2001) provides when an employee is "entitled" to benefits based on the work-related nature of his or her injury; by contrast, 39–A M.R.S.A. § 205(9) (2001) provides when an employer may discontinue "payment" of benefits which have already commenced. Because section 214(1)(A) addresses an employee's *entitlement* to benefits, it applies whether or not the employer has commenced payment of benefits at the time of the refusal.[1]

---

1. Holt also relies on subsections 214(2), (3), (4), discussing the role of the Bureau of Employment Services in cases involving payment of partial incapacity benefits. 39–A M.R.S.A. §§ 214(2), (3), (4) (2001). These subsections provide:

    **2. Notice to Bureau of Employment Services.** An insurance carrier or self-insurer shall notify the Bureau of Employment Services of the name of any injured employee who is unemployed and to whom the insurance carrier or self-insurer is *paying benefits* under this Act.

    **3. Priority.** The Bureau of Employment Services shall give priority to finding employment for those persons whose names are supplied under subsection 2.

    **4. Notice of refusal: termination of benefits.** The Bureau of Employment Services shall notify the board in writing of the name of any employee who refuses any bona fide offer of reasonable employment. Upon notification to the board, the board shall notify the insurance carrier or self-insurer who shall *terminate the benefits* of the employee pursuant to subsection 1, paragraph A.

    *Id.* (emphasis added). Holt contends that reference in subsection 4 to the procedure for an employer's termination of benefits pursuant to section 214(1)(A), implies that the employer must have already commenced benefits pursuant to subsection 2 for section 214(1)(A) to apply. We disagree.

    The plain language of section 214(1)(A) does not suggest that it is applicable only after the Bureau of Employment Services becomes involved in an employee's case. Similarly, reference to the "termination" of benefits in subsection 4 does not preclude

■ [¶ 6] Because we conclude that section 214(1)(A) is applicable in cases when an employer has not yet commenced payment of benefits, we next address whether section 214(1)(A) is available when an employee voluntarily resigns from post-injury employment. Holt contends that, as a matter of common usage, an employee's voluntary resignation from post-injury employment cannot be regarded as a "refusal" of a bona fide "offer" of employment.

[¶ 7] An existing employment relationship, however, implicitly constitutes an ongoing "offer" of employment, thereby obviating the need for an employer to make a formal, affirmative "offer" of employment. Similarly, when an employee resigns from a current employment relationship, the employee, in effect, rejects the employer's ongoing offer to come to work. *See Perez v. Keeler Brass Co.*, 461 Mich. 602, 608 N.W.2d 45, 52 (2000).[2] Our conclusion is supported by the purpose of the statute.

To require employees to accept bona fide offers of reasonable employment in order to retain entitlement to benefits pursuant to section 214(1)(A), but then to permit employees to subsequently quit that employment without good and reasonable cause, could easily defeat the purpose of the statute.

[¶ 8] In the present case, the Hearing Officer found Holt's resignation to have been voluntary and not compelled by reason of her work-related injury or any other good and reasonable cause. Moreover, there is no dispute that Holt's post-injury employment by SAD 6 for two years after her work-related injury was "reasonable employment" as that term is defined in 39-A M.R.S.A. § 214(5) (2001). Accordingly, we conclude that Holt has relinquished her entitlement to incapacity benefits during the period of her refusal pursuant to section 214(1).[3]

The entry is:

payments may not be suspended while the appeal is pending. The employer or insurer may recover from an employee payments made pending appeal to the Law Court if and to the extent that the Law Court has decided that the employee was not entitled to the compensation paid. *The board has full jurisdiction to determine the amount of overpayment, if any, and the amount and schedule of repayment, if any.* The board, in determining whether or not repayment should be made and the extent and schedule of repayment, shall consider the financial situation of the employee and the employee's family and may not order repayment that would work hardship or injustice.

39-A M.R.S.A. § 324(1) (2001) (emphasis added). Because section 324 makes clear that the Board has "full jurisdiction" of the issue of overpayment, which will depend largely on the ability of the employee to pay, we decline to reach the issue of a possible overpayment in this appeal.

application of section 214(1)(A) to cases when benefits have not yet commenced. More importantly, the employee's interpretation would severely limit the application of section 214(1)(A) and frustrate its clear purpose to encourage re-employment and permit employers to terminate benefits when employees unreasonably refuse work.

2. The employee in *Perez* returned to work for his employer on light duty following his injury. *Perez v. Keeler Brass Co.*, 461 Mich. 602, 608 N.W.2d 45, 47 (2000). A few months later, he quit to move to a different state, but refused to sign a "quit slip," so the employer terminated him formally after two or three days. *Id.* The Michigan Supreme Court concluded that the employee refused reasonable employment by quitting, thus preventing him from receiving benefits. *Id.* at 50.

3. SAD 6 makes an additional argument that it should recover "overpayments" made during the pendency of the appeal. Section 324(1) provides, in pertinent part:

If the board enters a decision awarding compensation and an appeal is filed with the Law Court pursuant to section 322,

Decision of the Hearing Officer is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the decision herein.