2007 ME 143

**Frederick THOMPSON**

v.

**EARLE W. NOYES &
SONS, INC., et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 28, 2006.

Decided: Nov. 20, 2007.

Karen M. Bilodeau (orally), McTeague, Higbee, Case, Cohen, Whitney & Toker, Topsham, for the employee.

Robert W. Bower (orally), C. Lindsey Morrill, Norman, Hanson & DeTroy, Portland, for the employer.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and SILVER, JJ.*

SILVER, J.

[¶ 1] Frederick Thompson appeals from a decision of a Workers' Compensation Board Hearing Officer (*Collier, HO*) awarding him partial incapacity benefits

---

* Justices Howard H. Dana Jr. and Susan Calkins sat at oral argument and participated in the initial conference but retired before this opinion was certified.

for a closed-end period ending on April 14, 2002, when he voluntarily resigned from his post-injury job at Earle W. Noyes & Sons, Inc., to care for his sick wife. The hearing officer determined, pursuant to 39–A M.R.S. § 214(1)(A) (2006), that Thompson forfeited his workers' compensation benefits when he resigned from employment because his reason for doing so was unrelated to the work injury or the employment. Thompson argues that he remains entitled to wage loss benefits because: (1) after leaving Noyes, he immediately went to work full-time for another employer at a comparable wage, and (2) his personal circumstances should have been considered good and reasonable cause to resign. We vacate the hearing officer's decision and remand for further proceedings.

## I.  BACKGROUND

[¶ 2]  Frederick Thompson began working for E.W. Noyes as a mover and delivery driver in 1981. He was injured at work in December of 1998, when he fell down stairs while moving furniture. He suffered low back pain and underwent fusion surgery. After two years out of work, Thompson gradually returned to E.W. Noyes where he performed light duty work in the warehouse and where he was paid $9.50 per hour, working hours that varied from week to week. Noyes voluntarily paid total or partial benefits throughout this period, until Thompson was released to full-time work in July of 2001. Although Thompson continued to earn less than his pre-injury wage, Noyes discontinued paying workers' compensation benefits at that time. Thompson's pre-injury average weekly wage was

$510.05.  From July of 2001 until April of 2002, he earned an average of $444.56 per week.

[¶ 3]  In early 2002, Thompson took a part-time job with Scarborough Glass in the evenings. He continued to work for Noyes until April 14, 2002, when he voluntarily resigned in order to care for his wife, who suffered from a staph infection.[1] He immediately went to work full-time for Scarborough Glass. Thompson planned to care for his wife during the day and work nights at Scarborough Glass, when his stepdaughter could care for her. There was no night shift work available at Noyes.

[¶ 4]  At Scarborough Glass, Thompson earned ten dollars per hour and worked forty hours per week steadily. Once his wife's health improved, he did not seek re-employment with Noyes. He continued in the Scarborough Glass job until he experienced a flare-up of the back injury in April of 2004. He has not worked since,

[¶ 5]  Thompson filed petitions for award and for payment of medical and related services, seeking various periods of partial and total incapacity benefits from July of 2001, forward. The hearing officer determined that Thompson continued to suffer the effects of the 1998 work injury, and awarded him partial incapacity benefits from July 5, 2001 to April 14, 2002. He further determined, however, that when Thompson voluntarily resigned from E.W. Noyes in April of 2002, he forfeited his workers' compensation benefits because he refused an offer of reasonable post-injury employment without good and reasonable cause pursuant to 39–A M.R.S. § 214(1)(A). The hearing officer stated:

The employer witnesses established that the warehouse position remained open to

1.  There was a factual dispute at the hearing regarding whether Thompson resigned voluntarily, or was fired after taking a leave of absence. The hearing officer resolved the, conflict by finding that Thompson resigned voluntarily. Although Thompson contests this factual finding, there is sufficient evidence in the record to support it.

Mr. Thompson but he chose to resign for personal reasons.... While Mr. Thompson's reasons for resigning, to free himself during the days to be able to provide better care for his injured wife, may be good and reasonable in many ways, *they are unrelated to the work injury and the employment.*

(Emphasis added.)

[¶ 6]  Thompson filed a petition for additional findings of fact and conclusions of law, which the hearing officer denied. Thompson then filed a petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322(3) (2006).

## II.  DISCUSSION

[¶ 7]  An employee who "receives a bona fide offer of reasonable employment from the previous employer or another employer," and who "refuses that employment without good and reasonable cause" is not entitled to receive wage loss benefits during the period of refusal. 39–A M.R.S. § 214(1)(A).[2]  We have identified two purposes underlying section 214(1)(A): (1) "to provide an opportunity for employers to mitigate workers' compensation benefits by offering injured employees reinstatement employment," and (2) "to encourage injured employees to return to work." *Loud v. Kezar Falls Woolen Co.,* 1999 ME 118, ¶ 7, 735 A.2d 965, 967. "Ac-

cordingly, once the employer makes a bona fide offer of reasonable employment, the employee is subject to a reciprocal obligation to accept that offer, *absent good and reasonable cause for refusal." Id.* (emphasis added).  Voluntary resignation from post-injury employment may constitute refusal of reasonable employment. *Holt v. S.A.D. No. 6,* 2001 ME 146, ¶¶ 7, 8, 782 A.2d 779, 782.

[¶ 8]  Cases governed by section 214(1)(A) are analyzed under a two-part test in which we consider: (1) whether the offered employment was "reasonable" pursuant to the statutory criteria in section 214(1)(5), and if so, (2) whether the employee had good and reasonable cause to refuse the employment. *Ladd v. Grinnell Corp.,* 1999 ME 76, ¶ 7, 728 A.2d 1275, 1277.  There is no dispute in this case that the warehouse job with Noyes constituted "reasonable employment" and the hearing officer found as a fact that Thompson refused the continuing offer of that employment when he resigned.

[¶ 9]  However, when Thompson resigned from Noyes, he immediately accepted an alternate offer of full-time employment from a different employer, Scarborough Glass, where he had been working on a part-time basis.  Accepting an offer from a different employer forestalls forfei-

2.  Title 39–A M.R.S. § 214(1)(A) (2006) provides:

§ **214.  Determination of partial incapacity**

**1.  Benefit determination.**  While the incapacity is partial, the employer shall pay the injured employee benefits as follows.

**A.**  If an employee receives a bona fide offer of reasonable employment from the previous employer or another employer or through the Bureau of Employment Services and the employee refuses that employment without good and reasonable cause, the employee is considered to have voluntarily withdrawn from the work force and is

no longer entitled to any wage loss benefits under this Act during the period of the refusal.

**5.  Reasonable employment defined.** 'Reasonable employment,' as used in this section, means any work that is within the employee's capacity to perform that poses no clear and proximate threat to the employee's health and safety and that is within a reasonable distance from that employee's residence.  The employee's capacity to perform may not be limited to jobs in work suitable to the employee's qualification and training.

ture under section 214(1)(A), provided the alternate employment is reasonable. Reasonable employment is defined in the statute as follows:

> 5. **Reasonable employment defined.** 'Reasonable employment,' as used in this section, means any work that is within the employee's capacity to perform that poses no clear and proximate threat to the employee's health and safety and that is within a reasonable distance from that employee's residence. The employee's capacity to perform may not be limited to jobs in work suitable to the employee's qualification and training.

39–A M.R.S. § 214(5) (2006).

[¶ 10] Noyes contends that accepting employment from another employer where the employee earns less is per se unreasonable, and should cause the employee to forfeit benefits. We disagree. While we have said that "the mitigative purpose of subsection 214(1)(A) would be defeated if an employee could avoid forfeiture by obtaining underemployment at a substantially reduced wage," *Loud*, 1999 ME 118, ¶ 10, 735 A.2d at 968, we have never said that an employee forfeits workers compensation benefits automatically when he accepts a job offer for lower compensation than the existing post-injury employment. None of the purposes of section 214(1)(A) are necessarily defeated when the employee is allowed to avoid forfeiture by accepting substitute work that accommodates his personal circumstances at a roughly comparable wage.

[¶ 11] On remand, the inquiry is whether, when Thompson accepted the offer to work full-time for Scarborough Glass, he accepted an offer of reasonable employment. In addition to the factors set forth in section 214(5), the hearing officer should consider that Thompson earned $44 per week less at Scarborough Glass than he earned at Noyes, but that the job where he had been working part-time, provided him with consistent hours and allowed him to work at night and be at home during the day to care for his wife. If the hearing officer determines that the Scarborough Glass job constitutes reasonable employment under the circumstances, then he should find that Thompson did not forfeit his wage loss benefits.

[¶ 12] Thompson also contends that the hearing officer erred when he determined that personal reasons unconnected to the work injury or employment cannot, as a matter of law, constitute good and reasonable cause for the purpose of section 214(1)(A). Because we vacate the decision on other grounds, we do not reach this issue. We note, however, that the decision whether an asserted reason for refusal or resignation from post-injury employment constitutes good and reasonable cause falls within the sound discretion of the hearing officer, upon careful consideration of the facts and circumstances unique to each case. *Thompson v. Claw Island Foods*, 1998 ME 101, ¶ 19, 713 A.2d 316, 320–21. "The phrase 'good and reasonable cause' is broad, and, we assume, intentionally so, in order to permit the consideration of a broad spectrum of factors that may arise in the factual context of individual cases." *Ladd*, 1999 ME 76, ¶ 10, 728 A.2d at 1278. "Each case ... should turn, ultimately on whether the effort, risk, sacrifice or expense is such that a reasonable person would not accept the offer." *Id.* ¶ 11, 728 A.2d at 1278–79 (quotation marks omitted).

The entry is:

The decision of the Workers' Compensation Board hearing officer is vacated and the case remanded for further proceedings consistent with this opinion.