**Muriel B. COTE**

v.

**OSTEOPATHIC HOSPITAL OF MAINE, INC. and Granite State Insurance Co.**

Supreme Judicial Court of Maine.

Argued June 10, 1981.

Decided Aug. 7, 1981.

Richardson, Tyler & Troubh, Robert J. Piampiano (orally), Thomas E. Getchell, Portland, for plaintiff.

Preti, Flaherty & Beliveau, Daniel Rapaport (orally), Keith A. Powers, Portland, for defendants.

Before McKUSICK, C. J., and GODFREY, ROBERTS and CARTER, JJ.

GODFREY, Justice.

The employee, Muriel B. Cote, appeals from a pro forma judgment of the Superior Court affirming a decree of the Workers' Compensation Commission granting the employer's petition for review of incapacity. On appeal Cote challenges the Commission's decree on three grounds: first, that there was no competent evidence supporting the Commissioner's finding that her physical condition had improved since the agreement awarding her workers' compensation was executed; second, that the Commissioner erred as a matter of law in concluding that she had not made a reasonable search for work within her physical capacity; and third, that the Commissioner erred as a matter of law in excluding from evidence certain doctors' reports. We affirm the judgment below.

On March 22, 1973, Cote suffered a recurrence of a back injury she had originally sustained while working at the Osteopathic Hospital of Maine. Pursuant to an agreement dated April 4, 1973, the Osteopathic Hospital began paying her compensation for total incapacity. On September 19, 1979, the hospital filed with the Commission a petition for review of Cote's incapacity.

A few months before the hospital filed its petition for review of incapacity, Cote had moved the Commission to order the hospital to transfer her to suitable work pursuant to 39 M.R.S.A. § 66–A (1978). In response to Cote's motion the hospital had offered her the position of "Unit Secretary." Although Cote received the offer, she never responded to it.

At a hearing on the hospital's petition, held on November 16, 1979, the Commission heard the testimony of Dr. Stephen Klein.

Dr. Klein, a neurosurgeon, had reviewed the records of doctors who had treated Cote at the time the compensation agreement was executed, and had personally examined the employee in April of 1979. According to the records of the treating physicians, Cote had initially suffered from severe pain in her left leg and lower back. When Dr. Klein saw her in April of 1979, she was complaining of pain in her right leg but the symptoms in her left leg and lower back had essentially disappeared. Dr. Klein concluded that despite her reports of pain in her right leg, Cote's overall physical condition had improved since the date of the compensation agreement. In his opinion, Cote was now employable in a nursing position that did not require extensive lifting, bending, or walking. More particularly, Dr. Klein testified that Cote was capable of performing the job of "Unit Secretary" that the hospital had offered her. Another physician, Dr. Thomas Martin, agreed that Cote could fill the position of Unit Secretary.

The employee testified by means of a written deposition. In her deposition Cote indicated that she had applied for work on four occasions, each time seeking employment in the nursing field. On two of those occasions she merely answered a newspaper advertisement and received no answer to her inquiry. On a third, she applied to a hospital that was not actively seeking new employees and was told that it had no job opportunities for a person with her physical limitations. Finally, on a fourth attempt to find work she applied for an advertised position as a part-time nurse supervisor and was rejected because of her physical disability. Although Cote was aware that the Osteopathic Hospital had offered her the job of Unit Secretary, she had refused that position both because she believed she was physically incapable of performing it and because she felt she was educationally overqualified for the job.

During the hearings, counsel for the employee attempted to introduce in evidence certain reports of medical examinations.

One group of documents, identified as Employee's Exhibit 5, contained a report by Dr. Thomas Martin that had not been served upon the employer's counsel within fourteen days before the hearing. In a second collection of reports, labelled as Employee's Exhibit 7, a single report by Dr. Carl Brinkman had been served upon opposing counsel within fourteen days before the hearing; the remainder had not been properly noticed. The Commissioner excluded both exhibits in their entirety. Concerning Exhibit 5, the Commissioner ruled that the report that had not been noticed for hearing was inadmissible under 39 M.R.S.A. § 93(3) (Supp.1980–81), and that the other reports were inadmissible because they were merely cumulative of Dr. Martin's earlier oral testimony. As to Exhibit 7, the Commissioner held that the entire exhibit was inadmissible for failure to comply with 39 M.R.S.A. § 93(3). In response to those rulings, Cote's counsel moved the Commissioner to grant a continuance in order to cure the notice defect. Because he had previously granted several continuances in the case and warned that he would not grant another, the Commissioner denied Cote's motion for a further continuance.

One June 4, 1980, the Commissioner issued his decree on the employer's petition for review of incapacity. Citing the testimony of Dr. Stephen Klein, the Commissioner found that Cote's physical condition had improved since the date of the compensation agreement. The Commissioner mistakenly identified Dr. Klein as having performed surgery on the employee. As further evidence that Cote's incapacity had diminished, the Commissioner noted that she had voluntarily submitted a petition for transfer to suitable work. Because she had been offered the position of Unit Secretary, a job she was capable of performing, the Commissioner found that she was no longer totally incapacitated from doing remunerative work. Accordingly, the Commissioner granted the employer's petition for review of incapacity to the extent of reducing Cote's compensation from total incapacity to fifty percent of capacity.

After the Commissioner issued his decree, both parties moved him to make specific findings of fact and conclusions of law pursuant to 39 M.R.S.A. § 99 (Supp.1980–81). Among other proposed findings of fact, Cote suggested to the Commissioner that Dr. Klein had merely examined her and had not performed surgery on her as the Commissioner had said. In a supplemental decree the Commissioner incorporated Cote's suggested correction and identified Dr. Klein as an examining neurosurgeon. The Commissioner further clarified his earlier decree by making the specific findings that Cote had not made reasonable efforts to obtain work within her capacity and that she had specifically refused the Osteopathic Hospital's offer of a job as Unit Secretary.

### 1.

■ On appeal Cote contends that the record lacks competent evidence supporting the Commissioner's finding that her physical condition had improved since the date of the compensation agreement. First, Cote argues that the Commissioner's misidentification of Dr. Klein as a treating physician caused the Commissioner to give undue weight to his testimony and insufficient weight to Dr. Martin's relatively guarded prognosis. Second, the employee asserts that the unrefuted evidence shows that the pain in her right leg had not diminished since the compensation agreement was executed. Finally, Cote contends that the Commissioner erred in regarding her petition for transfer to suitable work as competent evidence of an improvement in her physical condition. We reject each of the employee's contentions.

While the Commissioner appears to have misidentified Dr. Klein in his original decree, Cote brought that error to the Commissioner's attention and thus allowed him to correct that mistake in his supplemental decree. There is no reason to assume that the Commissioner any longer misapprehended the facts of the case when he rendered his final decree. Having heard the testimony of both Dr. Klein and Dr. Martin, the Commissioner was left to decide which doctor's opinion was more credible. There

being no suggestion of fraud, the Commissioner's decision to give greater weight to Dr. Klein's testimony is not reviewable by this Court. *Dunton v. Eastern Fine Paper Co.*, Me., 423 A.2d 512, 516 (1980).

██ Nor do we find error in the Commissioner's considering Cote's petition for transfer to suitable work in determining whether her physical condition had improved since the date of the compensation agreement. The mere fact that an employee has engaged in a search for work does not constitute competent evidence that he has recovered some earning capacity. *Haney v. Lane Construction Corp.*, Me., 422 A.2d 1292, 1296 (1980). The ordinary work search serves as merely a test of the employee's earning capacity, the employee making no representation that he is in fact capable of performing remunerative work. In contrast, the employee who files a petition for transfer to suitable employment pursuant to 39 M.R.S.A. § 66–A assumes the burden of showing that he has the capacity to perform some particular job within his employer's business. *Roy v. Sanborn's Motor Express, Inc.*, Me., 377 A.2d 1158, 1161–62 (1977). Because the employee, through the petition for transfer, represents to his employer that in fact he possesses some earning capacity, the filing of such a petition does constitute some evidence that the employee is able to work. Although in most cases the filing of a petition for transfer will have less probative value than medical expert opinion concerning the employee's work capacity, it is not incompetent evidence of earning capacity.

### 2.

██ Next, Cote asserts that the Commissioner erred in concluding that she had not made a reasonable search for work within her capacity. In her opinion, the evidence showed that she had repeatedly applied for work and been rejected because of her physical limitations. She argues that it was immaterial that the Osteopathic Hospital had offered her the position of Unit Secretary, for she believed she was physically incapable of performing that job.

The reasonableness of an employee's search for work is a mixed question of law and fact, requiring the Law Court to examine the reasonableness of the Commissioner's ultimate conclusions while deferring to his expertise. *Michaud v. Thayer Hospital Associates*, Me., 391 A.2d 1193, 1195 (1978). We find no error in the Commissioner's conclusion that Cote failed to make a reasonable search for work within her physical capacity. Cote applied for work only four times, on each occasion seeking employment in the nursing field. Even if it is assumed that so few attempts to secure work could constitute a reasonable search for employment, Cote's unsuccessful efforts tended to show merely that she was unable to find a position as a nurse—not that she was unable to obtain any remunerative work generally available in her community. Furthermore, in only one instance did an employer who was actively seeking new employees reject Cote expressly because of her physical disability. In all the circumstances it was not unreasonable for the Commissioner to conclude that the employee's limited search for work had no tendency to show that her work-related injury "continues to cause remunerative work in the marketplace to be unavailable" to her. *Poitras v. R. E. Glidden Body Shop, Inc.*, Me., 430 A.2d 1113 (1981).

Underscoring the insufficiency of Cote's work search is her refusal to accept the Osteopathic Hospital's offer of a position as Unit Secretary. Although Cote herself believed she was physically incapable of performing that job, both Dr. Klein and Dr. Martin testified to the contrary. The employee does not contend that she would have been required to perform the job without remuneration or that the wages she would have received would have been so trivial so as to be inconsistent with true employment. The Commissioner could reasonably find that by offering Cote a job she was capable of performing, the hospital satisfied its overall burden of proving that she had recovered the capacity to perform some kind of work. *See Ibbitson v. Sheridan Corp.*, Me., 422 A.2d 1005, 1008–09 (1980).

### 3.

Finally, Cote argues that the Commissioner erred in excluding Employee's Exhibits 5 and 7 from evidence. Concerning Exhibit 5, Cote admits that one of Dr. Martin's reports had not been properly noticed for hearing. However, because the other reports in Exhibit 5 were properly noticed for hearing, the employee contends that they should have been admitted into evidence notwithstanding the fact that they may have been cumulative with some of Dr. Martin's oral testimony. According to Cote, the Commissioner's exclusion of Exhibit 5 was prejudicial because Dr. Martin's office reports were more pessimistic about her recovery than his testimony at the hearing.

With regard to Exhibit 7, Cote first notes that the Commissioner was mistaken in concluding that a letter from Dr. Carl Brinkman dated April 28, 1980, had not been properly noticed for hearing. In Cote's view, the Commissioner's mistake constituted harmful error because Dr. Brinkman's letter indicated that Cote was physically unable to attend the hearings. Although she admits that the other letters in Exhibit 7 were not properly noticed for hearing, Cote maintains that the Commissioner was obliged to grant a continuance to permit her to cure the defect in notice. She says that the Commissioner's obligation to continue the case arose from the fact that the excluded letters in Exhibit 7 contained evidence favorable to the employee. Finally, Cote argues that the Commissioner erred in concluding that she was not totally disabled from working after he had already acquiesced in her doctor's recommendation that she not attend the hearing. From our review of the record we must conclude that the Commissioner erred only in excluding Dr. Brinkman's letter, and that the error was harmless.

■ Section 93(3) of title 39 provides: Signed statements by a medical doctor or osteopathic physician relating to medical questions . . . shall be admissible in workers' compensation hearings before the Workers' Compensation Commission, providing that notice of that testimony to be used is given and service of a copy of the letter or report is made on the opposing counsel 14 days before the scheduled hearing to enable that counsel to depose or subpoena and cross-examine that medical doctor [or] osteopathic physician . . . if he so chooses.

The purpose of that provision is to render a physician's signed statement relating to medical questions admissible in Workers' Compensation Commission hearings to the same extent that the physician's oral testimony would be admissible. *See* "Statement of Fact", 2 Me.Legis.Doc. 105th Legislature Reg. Sess.1971, L.D. 592. Thus, if the moving party has notified opposing counsel of his intention to introduce a physician's signed report into evidence at least fourteen days before the hearing, that report itself will not be open to an objection on the ground of hearsay.

However, section 93(3) does not purport to nullify all possible evidentiary defects in a physician's written report. Because the statute renders the physician's report admissible only to the extent that the physician's oral testimony would be admissible, objections that could be sustained with respect to oral testimony may also be sustained with respect to the written report.

■ In the present case the Commissioner properly excluded from evidence those physicians' reports that had not been served upon counsel for the employer at least fourteen days before the hearing in which Cote sought to introduce them. The Commissioner did not abuse his discretion in refusing to grant Cote's request for a continuance in order to cure the notice defect. The Commissioner had already granted Cote several continuances and had warned that he would not permit another. Having had ample opportunity to comply with section 93(3) and knowing that the Commissioner would tolerate no further delays, Cote may not complain of the Commissioner's refusal to grant a further continuance necessitated only by her own default.

■ Nor do we find error in the Commissioner's exclusion of those portions of Exhibit 5 that he found to be merely cumulative. The excluded reports were prepared by Dr. Thomas Martin, who had testified orally at the hearings. During his testimony Dr. Martin had referred to his office reports extensively and had given a detailed evaluation of Cote's physical condition. On cross-examination, Cote's counsel had elicited all the information in the physician's reports that could have favored the employee. The Commissioner acted within his discretion in concluding that the admission of the reports themselves would be merely cumulative and wasteful of the Commission's time.

■ It is true that the Commissioner erred in excluding from evidence the letter from Dr. Carl Brinkman dated April 28, 1980, that formed part of Exhibit 7. Although the Commissioner excluded the letter only on the ground that Cote had not satisfied the fourteen-day notice requirement in section 93(3), it is clear from the record that the letter was timely served on counsel for the employer. However, the error was not harmful to the employee. The letter stated merely that Dr. Brinkman was examining Cote for possible irritation of a spinal nerve and that, pending certain tests, he had directed Cote to limit her activities. The letter did not confirm a diagnosis of Cote's symptoms, nor did it provide an appraisal of her ability to perform work. Although the Commissioner may have relied on that letter in allowing Cote to testify by deposition rather than through oral testimony, that ruling was not inconsistent with the Commissioner's ultimate decision that Cote had recovered fifty percent of her earning capacity. Out of deference to Dr. Brinkman's plan of treatment, the Commissioner could have properly decided to excuse Cote from attending the hearings while reserving judgment concerning her ability to work.

The entry is:

Appeal denied.

Pro forma judgment of the Superior Court affirmed.

It is further ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All concurring.