2001 ME 142

**Judith MORSE**

v.

**FLEET FINANCIAL GROUP.**

Supreme Judicial Court of Maine.

Argued: Sept. 13, 2001.
Decided: Oct. 18, 2001.

Paul M. Boots, Esq. (orally), Portland, for employee.

Thomas R. Kelly, Esq. (orally), Darby C. Urey, Esq., Robinson Kriger & McCallum, Portland, for defendant.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Fleet Financial Group appeals from a decision of a hearing officer of the Workers' Compensation Board, granting an employee's petition for award and awarding benefits for total incapacity pursuant to 39–A M.R.S.A. § 212 (2001). We agree with Fleet that, absent a finding of a total physical incapacity, it was error to award benefits for total incapacity based on the combination of a partially incapacitating injury and personal characteristics affecting employability, but without adequate work-search evidence or other objective evidence showing the unavailability of work in the local community. Accordingly, we vacate.

---

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

## I.   CASE HISTORY

[¶ 2] Judith Morse suffered a work-related, left knee-injury on September 28, 1998, while employed at Fleet.  Morse's position at Fleet was terminated in October 1998 as a result of company-wide downsizing and Morse received a twenty-six-week severance package.  Morse obtained short-term, post-injury employment with another employer for approximately one month.  She underwent knee surgery in December 1998, shortly after leaving that employment.

[¶ 3] Morse filed a petition for award of compensation in 1999.  At the hearing, Morse testified that she performed a work search.  Her evidence consisted of her own testimony that she had received unemployment benefits and that, as a condition of her receipt of those benefits, she made three job inquiries a week for a period of time to employers who were not identified.

[¶ 4] The hearing officer granted Morse's petition and awarded total incapacity benefits from the date of surgery forward.  The hearing officer stated:

> 5.   Ms. Morse is 55 years of age, she has a GED and she worked for Fleet or its predecessor from 1985 through October, 1998.  She was working part-time, but at $9.33 an hour.  At the close of evidence her mobility was diminished.  I accept her testimony that standing, walking and stairs present the biggest difficulties to her. Her knee buckles a couple of times a week and her balance is reduced.  I accept [her doctor's] restrictions which is sedentary work with very limited standing and lifting and no kneeling, squatting or climbing stairs.  Beyond that, Ms. Morse was going to

physical therapy a couple of times a week at the close of the evidence.

> 6.   The evidence established that Judith Morse had some ability to function.  But, given her age and the work she has done in the past, the only work she was capable of at the close of evidence was so limited in duration and availability that she is totally incapacitated under the Act. *Dailey v. Pinecap, Inc.,* 321 A.2d 492, 495 (Me.1974).

The hearing officer denied Fleet's motion for further findings of fact and conclusions of law, and we granted Fleet's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).

## II.   DISCUSSION

■   [¶ 5] Employees with work-related injuries may be entitled to incapacity benefits for either total or partial incapacity, based on the difference between the employee's pre-injury wage and post-injury earning capacity.  39–A M.R.S.A. §§ 212, 213, 214 (2001).  Post-injury earning capacity is based on (1) the employee's physical capacity to earn wages, and (2) the availability of work within the employee's physical limitations.  *See Dumond v. Aroostook Van Lines,* 670 A.2d 939, 941 (Me.1996); *Warren v. Vinalhaven Light & Power Co.,* 424 A.2d 711, 714 (Me.1981).

■   [¶ 6] Pursuant to the work search rule,[1] partially incapacitated employees may be entitled to compensation for 100% partial incapacity based on the combination of a partially incapacitating work-injury and the loss of employment opportunities attributable to that injury.  *See, e.g., Bureau v. Staffing Network, Inc.,* 678 A.2d

---

1.   While often characterized as the "work search" rule, the rule actually addresses presentation of evidence that work is unavailable within an employee's local community.  This evidence may include evidence of a work search, labor market surveys or other credible evidence regarding availability of work for a particular employee in the local community. *Dumond v. Aroostook Van Lines,* 670 A.2d 939, 942 (Me.1996).

583, 587 (Me.1996); *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1009 (Me.1980); *Crocker v. Eastland Woolen Mill, Inc.*, 392 A.2d 32, 34–35 (Me.1978); *Ray's Case*, 122 Me. 108, 110–11, 119 A. 191, 192 (1922).

■ [¶ 7] Where the employee is the petitioning party, as is the case here, "the employee must bear the ultimate burden of proof to show that work is unavailable as a result of the injury." *Tripp v. Philips Elmet Corp.*, 676 A.2d 927, 929 (Me.1996). Because Morse filed the petition for award, Morse bore the ultimate burden of proof to establish the unavailability of work.[2]

■ [¶ 8] Employees with a total physical incapacity can prove entitlement to total incapacity benefits without a showing of a work search or other evidence of work unavailability. *See, e.g., Dailey v. Pinecap, Inc.*, 321 A.2d 492, 495 (Me.1974). In some limited situations, employees with a partial physical incapacity may be entitled to total incapacity benefits pursuant to § 212, but only if the employee can establish (1) the unavailability of work within the employee's local community, and (2) the physical inability to perform full-time work in the state-wide labor market, regardless of the availability of that work. *See Lamphier v. Bath Iron Works Corp.*, 2000 ME 121, ¶¶ 9–10, 755 A.2d 489, 493–94; *Adams v. Mt. Blue Health Ctr.*, 1999 ME 105, ¶ 17, 735 A.2d 478, 483. Because Morse has not demonstrated a total physical incapacity, her entitlement to total incapacity benefits is contingent on showing the unavailability of work within her local community pursuant to the work search rule.

■ [¶ 9] Hearing officers may look to personal characteristics of an employee in determining overall employability, e.g., age, educational background, intelligence, work-experience, vocational training, etc. *See Johnson v. Shaw's Distrib. Ctr.*, 2000 ME 191, ¶ 12, 760 A.2d 1057, 1060; *Dailey*, 321 A.2d at 496. *See also* 4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 83–04 (2000). However, we have held that an employee with a partial physical incapacity cannot meet the requirements of the work search rule relying solely on the combination of a partially incapacitating injury and personal characteristics relating to employability, without some additional evidence showing the unavailability of work within the employee's local community. *Crocker*, 392 A.2d at 35–36.

[¶ 10] Morse relies on *Foster v. Bath Iron Works*, 317 A.2d 11, 15 (Me.1974), and *Dailey*, 321 A.2d at 495, in support of her assertion that limited qualifications in conjunction with a partial incapacity may be sufficient to meet the employee's burden of proof to show work-unavailability. Both *Dailey* and *Foster*, however, preceded *Crocker*, and both cases were expressly distinguished in *Crocker*, where we stated:

> In departing from the traditional rule, the commissioner cited our decision in *Foster* . . . . [In *Foster* ], we stated *obiter dicta* that upon a finding that the employee was partially disabled, a commissioner could, under certain circumstances, *infer* that the employee was

**2.** On an employer's petition for review, once the employer shows that the employee has regained a partial physical work-capacity, the burden of production shifts to the employee to present evidence indicating that work is unavailable to him or her as a result of the injury. *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1009 (Me.1980). If the employee meets the burden of production, the employer's "never shifting" burden of proof may require the employer to show that it is more probable than not that there is available work within the employee's physical ability. *Dumond*, 670 A.2d at 941. *See also Poitras v. R.E. Glidden Body Shop*, 430 A.2d 1113, 1114 (Me.1981).

entitled to total compensation *without* a showing by the employee of efforts to find suitable employment....

The issue squarely presented by this appeal is whether the *Foster* dictum has modified the traditional rule which required a partially disabled employee seeking compensation for total incapacity to present evidence of a work search regardless of his particular qualifications and the individual commissioner's perception of the local job market.

We reject any exception to the traditional rule....

*Crocker,* 392 A.2d at 35 (footnotes omitted). *Dailey,* a case where the employee had the burden of persuasion, was distinguished in a footnote. *Id.* at 36 n. 5.

[¶ 11] Morse concedes that the only additional evidence she provided concerning work unavailability was her testimony that she had "contacted at least three employers per week" in accordance with the requirements for receipt of unemployment benefits. She failed to provide a list of employers, however, or to identify a single employer that she had contacted.

[¶ 12] The "work search rule" does not require the employee to provide evidence of a "work search," per se, but any competent evidence to show the unavailability of work in his or her local community, such as labor market evidence. *See e.g., Dumond,* 670 A.2d at 942. When an employee attempts to show unavailability of work through work search evidence, however, the work search must be adequate as a matter of law. *See Ibbitson,* 422 A.2d at 1011–12. The issue of the adequacy of an employee's work search is a mixed question of law and fact. *See Harrington v. Goodwin's Chevrolet, Inc.,* 400 A.2d 358, 361 (Me.1979). In *Ibbitson,* 422 A.2d at 1011–12, we affirmed the hearing commissioner's finding that an employee's work search was inadequate when the employee testified that he had only inquired of seven different employers for work. *Id.* at 1007. We stated, generally:

[Work search] evidence should disclose that the worker made a reasonable exploration of the labor market in his community for the kind of work he has regained some ability to perform and that he was unable to obtain such work for remuneration either because no stable market for it existed or, if there was such a market, the work was not available to *him* by reason of the continuing limitations, caused by his work-related injury, upon his ability to perform it.

*Id.* at 1009. We stated further:

[B]efore it may be fairly said that the evidence produced by the worker as to "work search" has satisfied the burden of production he bears, that evidence should be "adequate" in the sense that it should at least give a rational person reasonable cause to believe that the work-related injury this particular worker sustained is preventing him from obtaining remunerative work "ordinarily" available in the competitive labor market of his community. Such reasonable cause will arise where the worker's exploration of the labor market in his community discloses a number of search experiences manifesting a "pattern", ... from which it becomes reasonable to infer either that a stable market for the kind of work the worker has regained some ability to perform does not exist in his community, or, if such a market does exist, that work will not be made available to this particular worker because of the persisting effects of the work-related injury he sustained.

In the case at bar the evidence produced by the worker related to seven employment application experiences. As to five of them, it was plain that the employers were hiring no one to per-

form any kind of work. Regarding the other two experiences, the evidence left highly ambiguous whether the reason for the worker's not being hired related either to the kind of work he could do, or the way he would be doing it. In any event, the circumstances involved manifestly were not such as could rationally be deemed a "pattern" of employment application experience giving reasonable cause to believe that the work-related injury suffered by the worker was still preventing him from being employed to perform some remunerative work.

The evidence produced by the worker was therefore inadequate as a matter of law to satisfy the burden of production imposed on him....

*Id.* at 1011–12. *See also Harrington,* 400 A.2d at 360–61 (work search inadequate as a matter of law when the employee made only two inquiries for employment and was refused because he lacked adequate licensing necessary for the jobs sought); *DeRoche v. Bangor Roofing & Sheet Metal Co.,* 411 A.2d 1026, 1027 (Me.1980) (three applications over sixteen-month period inadequate to show good faith work search, even when coupled with seventeen additional applications for work during the course of the hearing).

[¶ 13] In the present case, Morse provided no evidence of specific employers from whom she sought work, no evidence if those employers were hiring, and no evidence concerning whether the positions sought were within her qualifications. Without more specific evidence, it is impossible to determine, based on these facts, whether work is unavailable to Morse as a result of her injury or some other cause. Morse's work search evidence was inadequate as a matter of law. Accordingly, Morse failed to meet her burden to show entitlement to total or 100% partial incapacity benefits.

The entry is:

Decision of the hearing officer vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this opinion.