2007 ME 100

Patricia MONAGHAN

v.

JORDAN'S MEATS et al.

Supreme Judicial Court of Maine.

Argued: Nov. 28, 2006.

Decided: July 31, 2007.

James MacAdam, Esq. Anna Priluck, Esq. (orally), MacAdam Law Offices, Portland, for the Employee.

Kevin M. Gillis, Esq. (orally), Troubh, Heisler, Portland, Robert J. Piampiano, Esq., Piampiano Law Office, Yarmouth, for the Employer.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.*

---

* *Justice Howard H. Dana Jr. sat at oral argument and participated in the initial confer-* ence but retired before this opinion was certified.

SAUFLEY, C.J.

[¶ 1] In this workers' compensation appeal, we are asked to revisit the "work search rule" and to decide whether, pursuant to that rule, evidence that the injured employee made unsuccessful job inquiries at 147 potential employers compels a determination that work is unavailable to her in her local community, thereby requiring an award of 100% partial incapacity benefits. The Workers' Compensation Board hearing officer (*Jerome, HO*), finding Monaghan's work search to be insufficient, awarded only partial benefits. We review the state of the law regarding the work search rule, and, in light of our analysis, we vacate the hearing officer's decision and remand for further consideration.

## I. FACTUAL BACKGROUND

[¶ 2] Patricia Monaghan worked for Jordan's Meats from 1997 until the plant closed in 2005. She was hired as a packer on a production line. She eventually became a team leader, supervising other line employees. Before going to work at Jordan's Meats, she did piece work in a shoe factory for eleven years, and worked as a finance clerk for the City of Westbrook for an additional ten years. She has, from time to time, earned extra money reselling items at flea markets. She resides in the greater Portland area and has a GED.

[¶ 3] On September 19, 2003, Monaghan injured both knees when she tripped and fell over a fan at work. She was able to continue working for Jordan's Meats within her medical restrictions, and suffered no earning incapacity until after the plant closed in 2005. Monaghan filed a petition to fix and for award of workers' compensation benefits. Although she has a full-time work capacity, she continues to be on work

restrictions. Her restrictions require that she must vary position and not stand constantly, not climb ladders, stairs or ramps, not lift more than twenty-five pounds, and avoid squatting and kneeling.

[¶ 4] Monaghan sought "100% partial incapacity benefits." She attempted to establish that work was unavailable to her in her local community as a result of her injury with evidence of a work search. She presented evidence that she had contacted 147 employers regarding available work, that she took typing and computer classes in an effort to improve her prospects, but did not secure employment.

[¶ 5] Jordan's Meats submitted a labor market report that identifies fifty advertised jobs in the local labor market within Monaghan's restrictions, and contains the opinion that "there is and has been a stable labor market for Ms. Monaghan."

[¶ 6] The hearing officer concluded that Monaghan continues to suffer partial incapacity from the knee injury, but was not persuaded by the evidence that work within Monaghan's restrictions is unavailable to her as a result of her work injury. Thus, she awarded Monaghan ongoing partial benefits based on her 2003 average weekly wage, less an imputed earning capacity of $300 per week, with an offset for any unemployment benefits received.

[¶ 7] Monaghan filed a request for additional findings of fact and conclusions of law, which the hearing officer denied. She then filed a petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322 (2006) and M.R.App. P. 23.

## II. DISCUSSION

[¶ 8] Monaghan asks us to consider whether a particular quantum of evidence, in this case 147 employer contacts and job retraining efforts, should compel the conclusion that a work search is adequate as a matter of law pursuant to the work search rule. In order to address this question, we examine the nature and history of the work search rule, and the manner in which we have evaluated the adequacy of work searches to date.

### A. The "Work Search" Rule

[¶ 9] Whether an injured employee receives total or partial incapacity benefits depends on the extent to which that employee retains the ability to earn income after a workplace injury. 39–A M.R.S. §§ 212, 213, 214 (2006). The employee's post-injury earning capacity is based on both "(1) the employee's physical capacity to earn wages, and (2) the availability of work within the employee's physical limitations." *Morse v. Fleet Fin. Group,* 2001 ME 142, ¶ 5, 782 A.2d 769, 771. An employee who retains some ability to earn may nevertheless be entitled to receive the full amount of workers' compensation benefits, with no deduction for earning capacity, if the persisting effects of the work-related injury prevent the employee from engaging in any remunerative work. *Tripp v. Philips Elmet Corp.,* 676 A.2d 927, 929 (Me.1996).

[¶ 10] An injured employee whose capacity for employment exists but is limited may be entitled to receive the full amount of workers' compensation either as "total" incapacity benefits or as "100% partial" incapacity benefits. The critical distinction between total incapacity and 100% partial incapacity is found in the available duration of the benefits. Those benefits that fall within the 100% partial category are potentially subject to the maximum-week limitation in section 213, while total incapacity benefits awarded pursuant to section 212 would not be. *Alexander v. Portland Natural Gas,* 2001 ME 129, ¶ 22, 778 A.2d 343, 351.

[¶ 11] There are three ways in which an injured employee can show entitlement to the full amount of workers' compensation benefits.[1] First, an employee who demonstrates a total physical incapacity, that is, the medically demonstrated lack of the physical ability to earn, can prove entitlement to "total" incapacity benefits pursuant to section 212 without a showing of any work search or other evidence that work is unavailable. *Morse*, 2001 ME 142, ¶ 8, 782 A.2d at 772.

[¶ 12] Second, in limited situations, an employee suffering only partial incapacity to earn may be entitled to "total" benefits pursuant to section 212 if the employee can establish both (1) the unavailability of work within the employee's local community, and (2) the physical inability to perform full-time work in the statewide labor market, regardless of availability. *Id.; Alexander*, 2001 ME 129, ¶ 19, 778 A.2d at 351.

[¶ 13] Third, a partially incapacitated employee may be entitled to "100% partial" incapacity benefits pursuant to section 213 based on the combination of a partially incapacitating work injury and the loss of employment opportunities that are attributable to that injury. *Morse*, 2001 ME 142, ¶ 6, 782 A.2d at 771. In order to obtain the 100% benefit, it must be established, pursuant to the "work search rule" that work is unavailable within the employee's local community as a result of the work injury. *Id.* ¶ 7, 782 A.2d at 772.

[¶ 14] The "work search rule" is a judicially created doctrine designed to allocate the order and presentation of proof related to the availability of work.[2] *Tripp*, 676 A.2d at 929. When the employee is the petitioning party, as in this case, the employee has the ultimate burden of proof to show that work is unavailable *as a result of the work injury* within the employee's local community. *Morse*, 2001 ME 142, ¶ 7, 782 A.2d at 772.

[¶ 15] In a case in which the employer files a petition for review of incapacity, once the employer demonstrates that the employee has regained partial work capacity, the employee bears a burden of production to show that work is unavailable as a result of the injury, and if the employee meets that minimal burden, the employer's "never shifting" burden of proof may require it to show that it is more probable than not that there is work available in the community within the employee's physical ability. *Tripp*, 676 A.2d at 929.

[¶ 16] We have noted that the term "work search rule" is somewhat of a misnomer because the rule does not limit the employee's ability to prove unavailability of work to demonstration of unsuccessful work searches alone; any competent and persuasive evidence to show the unavailability of work in his or her local community is acceptable, including labor market surveys, or other credible evidence regarding availability of work for a particular employee in the local community. *Id.*

1. Both the total incapacity benefit and the 100% partial benefit would be calculated by taking 80% of the employee's after tax average weekly wage, without any deduction for earning capacity, capped at the maximum benefit. 39–A M.R.S. §§ 211, 212, 213 (2006).

2. The Legislature has, from time to time, codified various aspects of the work search rule. The current version of the Act contains no explicit codification of the rule. We have held, however, that the partial incapacity statute, 39–A M.R.S. § 213, implicitly incorporates the rule by providing that partial benefits are to be calculated according to what the post-injury employee is "able to earn." *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 587–89 (Me.1996).

Often, however, a work search is the most straightforward and persuasive method of demonstrating the availability of work, or lack thereof.

[¶ 17] When an employee attempts to show the unavailability of work through work search evidence, the work search must be adequate as a matter of law. *Morse*, 2001 ME 142, ¶ 12, 782 A.2d at 773. We have described an adequate work search as follows:

> [Work search] evidence should disclose that the worker made a reasonable exploration of the labor market in his community for the kind of work he has regained some ability to perform and that he was unable to obtain such work for remuneration either because no stable market for it existed or, if there was such a market, the work was not available to *him* by reason of the continuing limitations, caused by his work-related injury, upon his ability to perform it.

*Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1009 (Me.1980). Further, work search evidence should:

> give a rational person reasonable cause to believe that the work-related injury this particular worker sustained is preventing him from obtaining remunerative work "ordinarily" available in the competitive labor market of his community. Such reasonable cause will arise where the worker's exploration of the labor market in his community discloses a number of search experiences manifesting a "pattern", . . . from which it becomes reasonable to infer either that a stable market for the kind of work the worker has regained some ability to perform does not exist in his community, or, if such a market does exist, that work

will not be made available to this particular worker because of the persisting effects of the work-related injury he sustained.

*Id.* at 1011.[3]

**B. Evaluating the Employee's Work Search**

[¶ 18] The issue of adequacy of a work search is a mixed question of fact and law. *Morse*, 2001 ME 142, ¶ 12, 782 A.2d at 773. Findings regarding the actual efforts made by the employee to obtain work are factual. *Theriault v. Walsh Constr. Co.*, 389 A.2d 317, 320 (Me.1978). The evaluation of the reasonableness of those efforts, however, is a mixed question requiring us to examine the reasonableness and legality of the hearing officer's ultimate conclusion, with deference to her relevant expertise. *Id.*

[¶ 19] In the matter before us, the hearing officer made the following findings relevant to Monaghan's work search:

> [Monaghan] has looked for work and engaged in various typing/computer classes since [the plant closed]. She has not found work.
>
> Ms. Monaghan must demonstrate, on a more probable than not basis, that work within her restrictions and consistent with her educational and vocational background is unavailable to her on account of the effects of her work injury if she is to receive 100% partial incapacity benefits. Ms. Monaghan has presented work search evidence in this regard but I find that it fails to carry her burden of proof. While I found Ms. Monaghan to be well-intentioned, I note that the way she went about looking for work was

3. *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005 (Me.1980) involved an employer's petition for review of incapacity. While the language cited herein describes the employee's burden of production, we find it equally descriptive of the employee's burden of proof, the difference resting in the quantum and persuasive quality of the evidence required to meet the burden.

problematic in terms of demonstrating that appropriate work was not available. *Many of the places she visited were not hiring. The work search was not targeted to available and appropriate work and thus it is not persuasive evidence on Ms. Monaghan's burden of proof.* (Emphasis added.)

[¶ 20] Monaghan contends that the hearing officer erred because the evidence in this case, including evidence that she made 147 unsuccessful employer contacts, compels the conclusion that work was unavailable to her in her local community. She proposes that we adopt a bright line test for evaluating the number of inquiries necessary to establish an adequate work search, contending that such a test would simplify the proceedings and would help provide predictability and uniformity. Ultimately, Monaghan suggests that twenty-five inquiries should be deemed adequate as a matter of law.

[¶ 21] However, as the diversity of analyses in our opinions illustrates, the inquiry must go deeper than a mere examination of the number of contacts that the employee makes with employers. When evaluating a hearing officer's decision regarding the adequacy of a work search, we have in the past taken a variety of factors into consideration. These factors provide guideposts for the evaluation of whether the employee has made a reasonable exploration of the labor market in her community for the kind of work she is able to perform. Those factors include, but are not limited to:

(1) The number of inquiries made or applications submitted by an employee. *Bowen v. Maplewood Packing Co.,* 366 A.2d 1116, 1119 (Me.1976).

(2) Whether the search was undertaken in good faith. *McIntyre v. Great N. Paper, Inc.,* 2000 ME 6, ¶ 7, 743 A.2d 744, 747.

(3) Whether the search was too restrictive. *See Cote v. Osteopathic Hosp. of Me., Inc.,* 432 A.2d 1301, 1305 (Me.1981).

(4) Whether the search was limited solely to employers who were not advertising available positions, or whether the employee also made appropriate use of classified ads or other employment resources in the search. *See Ibbitson,* 422 A.2d at 1011–12; *Bowen,* 366 A.2d at 1117–18.

(5) Whether the search was targeted to work that the employee is capable of performing. *See Cote,* 432 A.2d at 1305.

(6) Whether the employee over-emphasized work restrictions when applying for jobs. *Pelchat v. Portland Box Co., Inc.,* 155 Me. 226, 231, 153 A.2d 615, 618 (1959).

(7) Whether the employee engaged in other efforts to find employment or increase prospects for employment. *McIntyre,* 2000 ME 6, ¶ 7, 743 A.2d at 747.

(8) The employee's personal characteristics such as age, training, education, and work history. *Johnson v. Shaw's Distrib. Ctr.,* 2000 ME 191, ¶ 12, 760 A.2d 1057, 1060.

(9) The size of the job market in the employee's geographic area. *See Bolduc v. Pioneer Plastics Corp.,* 302 A.2d 577, 581 (Me.1973).

[¶ 22] While all of the factors set forth in this nonexclusive list have been noted in our prior decisions, we restate them here in order to clarify that the hearing officer's task is not to focus on any single aspect of the employee's efforts, but to view the evidence through a broad lens to determine whether the employee's efforts demonstrate that she was unable to find work because (1) no stable market for the kind of work she is able to perform exists in the local community; or (2) if

there is such a market, that work is un-available to the employee due to the per-sisting effects of the work-related injury. Establishing a bright line beyond which a particular number of contacts would con-stitute an adequate work search as a mat-ter of law cannot substitute for a thorough evaluation and weighing of the factors bearing on the reasonableness of the work search.

[¶ 23] Having rejected Monaghan's call for a bright line rule, we turn now to whether the hearing officer adequately ad-dressed the relevant factors when evaluat-ing Monaghan's work search. The hearing officer considered several appropriate fac-tors. She determined that the search was conducted in good faith, that Monaghan did look for work, and that she had taken computer and typing classes to improve her job prospects. On the other hand, she also found that Monaghan had conducted the work search in a manner that was not targeted to employers who were hiring, and that Monaghan randomly contacted employers instead of targeting the search to advertised, appropriate work. While the hearing officer found that many of the places Monaghan contacted were not hir-ing, she did not evaluate the extent to which Monaghan may have responded to advertisements or used other resources for finding jobs, in addition to making cold calls.

[¶ 24] Other factors may have been a part of the hearing officer's analysis, but are not set forth in the decision. For example, although the hearing officer may

have been persuaded by the labor market evidence presented by the employer show-ing fifty available jobs within Monaghan's restrictions, she did not make any findings with respect to that evidence. In addition, the hearing officer did not expressly con-sider whether Monaghan's personal char-acteristics, such as age and experience, had any bearing on her lack of success, whether she properly presented her work restrictions to employers, or whether she focused on jobs that were beyond her physical capabilities.

 [¶ 25] Because we have not previ-ously addressed the factors to be consid-ered in determining the accuracy of a work search in the detail we have set forth here, and because we are unable to determine what additional facts may have played a part in the hearing officer's decision and how those facts would ultimately have been weighed, we vacate the decision and remand to the hearing officer for reconsid-eration of the evidence in light of the principles announced in this decision.[4]

The entry is:

The decision of the Workers' Compensa-tion Board hearing officer is vacated, and the matter remanded for proceedings con-sistent with this opinion.

---

4. Monaghan also urges us to place an initial burden of production on the employer to show that work exists within the employee's restrictions in the local community, even when the employee has the burden of proof. We decline to do so because we discern no compelling reason to require the employer to develop labor market evidence in every case. Moreover, in this case, Jordan's Meats pre-sented labor market evidence that would have been sufficient to meet any such proposed burden of production.