2008 ME 140

**Dragoslav AVRAMOVIC**

v.

**R.C. MOORE TRANSPORTATION, INC., et al.**

Supreme Judicial Court of Maine.

Argued: June 16, 2008.
Decided: Sept. 9, 2008.

James J. MacAdam, Esq., Nathan A. Jury, Esq. (orally), David E. Hirtle, Esq., MacAdam Law Offices, P.A., Portland, ME, for Dragoslav Avramovic.

Evan M. Hansen, Esq., James C. Bush, Esq. (orally), Preti Flaherty Beliveau & Pachios, LLP, Portland, ME, for R.C. Moore Transportation, Inc. and The MMTA Workers' Compensation Trust.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] Dragoslav Avramovic appeals from a decision of a Workers' Compensation Board hearing officer (*Collier, HO*) awarding him partial incapacity benefits for a 2003 back injury incurred while working for R.C. Moore Transportation. Avramovic contends that he should have been awarded 100% partial incapacity benefits because he proved that work is unavailable to him as a result of the work injury, and that the hearing officer wrongly applied the law to analyze his work search. In a cross-appeal, R.C. Moore contends that the hearing officer erred when determining that it did not meet its burden of proof that a job offer from Expediter Corporation was a bona fide offer of reasonable employment pursuant to 39–A M.R.S. § 214(1)(A) (2007). We affirm the hearing officer's factual determination that the job offer was not an offer of reasonable employment, but we remand for further findings on the work search issue.

I. CASE HISTORY

[¶ 2] Dragoslav Avramovic is fifty-eight years old. He was born in the former Yugoslavia. He speaks several languages, has a bachelors degree in economics, and worked as an economist and financial officer for an oil company in Bosnia before he immigrated to Germany in 1992. He moved from Germany to the United States in 1998, and began working as a truck driver for R.C. Moore in 2000. When he came to the United States, his English was limited, but he now can communicate fairly well in English.

[¶ 3] Avramovic injured his back at work in October 2003, when he jumped down from a trailer to pull down the trailer door. He received medical treatment and returned to work. The following month, he reinjured his back at work while pulling a wooden ramp to place under the wheels of his trailer. He suffered a large disk herniation that required surgery. He returned to work, with restrictions, in February 2004. His pain increased and he went out of work again in March 2004. Thereafter, he was unable to return to truck driving.

[¶ 4] In July 2005, R.C. Moore gave Avramovic a part-time position in its accounts receivable department, where he worked varying hours as tolerated, up to six hours a day. By mid–2006, his pain was increasing and his doctors restricted his work to twenty hours per week. R.C. Moore offered to keep him on, but needed him for a minimum of thirty hours per week. Avramovic declined that offer because he could not tolerate working thirty hours, and his employment was terminated in July 2006.

[¶ 5] Avramovic searched for other employment within his restrictions, but was unsuccessful. R.C. Moore contacted Expediter Corporation, a national company that assists employers in accommodating injured employees, to find employment for Avramovic within his restrictions. Expediter offered a light duty, home-based employment for Avramovic with Information

Direct, Inc., (IDI) conducting telephone surveys. The position was offered to Avramovic based on information provided by R.C. Moore's attorney, and without any interview or direct contact with Avramovic. This job was alleged to be within Avramovic's restrictions and approved by his doctor, if it was restricted to four hours per day and twenty hours per week. Avramovic did not accept the offer of employment with IDI.

[¶ 6] R.C. Moore contended that Avramovic had forfeited his right to workers' compensation benefits pursuant to 39–A M.R.S. § 214(1)(A) because he refused a bona fide offer of reasonable employment from Expediter.

[¶ 7] Avramovic filed a petition for award and a petition for review related to the October and November 2003 dates of injury. He sought total incapacity benefits or 100% partial incapacity benefits. He presented evidence of a work search that included 300 job applications and thirteen personal interviews, to demonstrate that work was unavailable to him in his local community as a result of his work injury. Of Avramovic's job applications, 250 were in the fields of accounting, bookkeeping, and financial services, and fifty job applications were in other areas of employment, including temporary staffing services, clerical and office positions, and data entry.

[¶ 8] The hearing officer determined that Avramovic suffered a single injury in October 2003, and that he was currently capable of working only twenty hours per week. Addressing the work search, the hearing officer found:

His work search is certainly impressive in its extent, and the thoroughness of its documentation. He made appropriate use of the local newspapers and internet advertisements and other employment resources, such as monthly visits to the Career Center. He has certainly been trying to increase his employability, by taking adult education courses in accounting and office clerk, and he is currently studying to become a computer technician. There is no evidence that he over-emphasized his work restrictions. His persistence demonstrates his good faith. He has shown evidence [of] over 300 applications, which have resulted in 13 personal interviews, without success in finding a job so far. But even as extensive as it is, I find it to be insufficiently broad to meet his burden to demonstrate that work is unavailable to him in his local community as a result of the work injury.... Mr. Avramovic has focused his efforts almost exclusively on positions within the fields of accounting, bookkeeping and financial services. But he has a breadth of education and work experience and a variety of skills and is capable of performing a fairly wide range of jobs within his work restrictions, including jobs in many fields other than those he has targeted. He is not entitled to an increase in his partial benefit based on his work search and other evidence of the unavailability to him to work in his local community.

Accordingly, the hearing officer awarded Avramovic partial incapacity benefits, but rejected his request for 100% partial incapacity benefits.

[¶ 9] The hearing officer also found that Avramovic was not barred from receiving future benefits because he refused the Expediter job offer. The hearing officer noted that the record included "very little evidence offered about IDI itself" or "what IDI would have Mr. Avramovic doing in the job." Thus, the hearing officer determined that the offer was not a bona fide offer of reasonable employment because R.C. Moore did not prove that the position offered is "one that is actually available in the competitive labor market."

[¶ 10] Avramovic filed a brief and general petition for additional findings of fact and conclusions of law, which the hearing officer granted in part to specify Avramovic's post-injury earning capacity for the purpose of calculating the partial benefit owed. The hearing officer did not make any further findings regarding the work search, as no specific findings regarding the work search had been requested. Both parties filed petitions for appellate review, which we granted pursuant to 39–A M.R.S. § 322 (2007) and M.R.App. P. 23.

## II. LEGAL ANALYSIS

### A. Bona Fide Offer of Employment

[¶ 11] R.C. Moore contends that Avramovic refused a bona fide offer of reasonable employment, and therefore is no longer entitled to receive workers' compensation benefits pursuant to 39–A M.R.S. § 214(1)(A). An employee who "receives a bona fide offer of reasonable employment from the previous employer or another employer," and who "refuses that employment without good and reasonable cause" is not entitled to receive wage loss benefits during the period of refusal. 39–A M.R.S. § 214(1)(A).[1] "We have identified two purposes underlying section 214(1)(A): (1) to provide an opportunity for employers to mitigate workers' compensation benefits by offering injured em-

ployees reinstatement employment, and (2) to encourage injured employees to return to work." *Thompson v. Earle W. Noyes & Sons, Inc.*, 2007 ME 143, ¶ 7, 935 A.2d 663, 666. "Accordingly, once the employer makes a bona fide offer of reasonable employment, the employee is subject to a reciprocal obligation to accept that offer, absent good and reasonable cause for refusal." *Id.*

[¶ 12] Cases governed by section 214(1)(A) are analyzed under a two-part test in which we consider: (1) whether the offered employment was "reasonable" pursuant to the statutory criteria in section 214(5), and if so, (2) whether the employee had good and reasonable cause to refuse the employment. *Thompson v. Claw Island Foods*, 1998 ME 101, ¶¶ 7, 8, 713 A.2d 316, 318.

[¶ 13] The hearing officer found that the job offered to Avramovic was not a bona fide offer of reasonable employment because the employer did not prove that the position offered is actually available in the competitive labor market. The hearing officer found that the employer presented insufficient evidence about EDI, including the type of business it is; how long it has been in operation; how many employees it has hired through Expediter; whether they keep their jobs beyond the

---

1. Title 39–A M.R.S. § 214 (2007) provides in pertinent part:

    § 214. **Determination of partial incapacity**

    1. **Benefit determination.** While the incapacity is partial, the employer shall pay the injured employee benefits as follows. A. If an employee receives a bona fide offer of reasonable employment from the previous employer or another employer or through the Bureau of Employment Services and the employee refuses that employment without good and reasonable cause, the employee is considered to have voluntarily withdrawn from the work force and is

    no longer entitled to any wage loss benefits under this Act during the period of the refusal.

    . . . .

    5. **Reasonable employment defined.** "Reasonable employment," as used in this section, means any work that is within the employee's capacity to perform that poses no clear and proximate threat to the employee's health and safety and that is within a reasonable distance from that employee's residence. The employee's capacity to perform may not be limited to jobs in work suitable to the employee's qualification and training.

training period; and the type of work the employee would be hired to perform. The hearing officer stated: "Without some more specific information about his duties and how they relate to the company's business and the broader market I am unable to conclude that it is more likely than not that this specific job offer is a 'bona fide offer of reasonable employment' as required by 39–A M.R.S. § 214(1)(A)."

[¶ 14] "Whether a burden of proof has been satisfied depends ultimately on the persuasiveness of evidence...." *Pomerleau v. United Parcel Serv.*, 464 A.2d 206, 208 (Me.1983). Our role on appeal is limited to assuring that a hearing officer's "factual findings are supported by competent evidence, that [the] decision involved no misconception of applicable law and that the application of the law to the facts was neither arbitrary nor without rational foundation." *Id.* at 209. The hearing officer reasonably found that R.C. Moore failed to meet its burden of proof on the issue of an offer of reasonable employment. The decision on the reasonable offer of employment issue is affirmed.

B. Work Search

■ [¶ 15] Whether an injured employee receives total or partial incapacity benefits depends on the extent to which that employee retains the ability to earn income after a work injury. 39–A M.R.S. §§ 212, 213, 214 (2007). The employee's post-injury earning capacity is based on both "(1) the employee's physical capacity to earn wages, and (2) the availability of work within the employee's physical limitations." *Morse v. Fleet Fin. Group*, 2001 ME 142, ¶ 5, 782 A.2d 769, 771.

■ [¶ 16] An employee who retains some ability to earn may be entitled to receive the full amount of workers' compensation benefits, with no deduction for earning capacity ("100% partial incapacity

benefits"), pursuant to 39–A M.R.S. § 213, "based on the combination of a partially incapacitating work injury and the loss of employment opportunities that are attributable to that injury." *Monaghan v. Jordan's Meats*, 2007 ME 100, ¶ 13, 928 A.2d 786, 791. In order to obtain the 100% benefit, the employee must demonstrate, pursuant to the "work search rule," that work is unavailable within the employee's local community as a result of the work injury. *Id.* The "work search rule" is designed to "allocate the order and presentation of proof related to the availability of work." *Id.* ¶ 14, 928 A.2d at 791. When the employee is the petitioning party, as in this case, the employee has the burden of proof to show that work is unavailable as a result of the work injury within the employee's local community. *Id.*

■ [¶ 17] The issue of adequacy of a work search is a mixed question of fact and law. *Morse*, 2001 ME 142, ¶ 12, 782 A.2d at 773. Findings regarding the actual efforts made by the employee to obtain work are factual. *Theriault v. Walsh Constr. Co.*, 389 A.2d 317, 320 (Me.1978). The evaluation of the reasonableness of those efforts is a mixed question requiring us to examine the reasonableness and legality of the hearing officer's ultimate conclusion. *Id.*

[¶ 18] We have described an adequate work search as follows:

[Work search] evidence should disclose that the worker made a reasonable exploration of the labor market in his community for the kind of work he has regained some ability to perform and that he was unable to obtain such work for remuneration either because no stable market for it existed or, if there was such a market, the work was not available to *him* by reason of the continuing

limitations, caused by his work-related injury, upon his ability to perform it. *Monaghan,* 2007 ME 100, ¶ 17, 928 A.2d at 792 (alteration and emphasis in original) (quoting *Ibbitson v. Sheridan Corp.,* 422 A.2d 1005, 1009 (Me.1980)). Further, work search evidence should:

give a rational person reasonable cause to believe that the work-related injury this particular worker sustained is preventing him from obtaining remunerative work "ordinarily" available in the competitive labor market of his community. Such reasonable cause will arise where the worker's exploration of the labor market in his community discloses a number of search experiences manifesting a "pattern", ... from which it becomes reasonable to infer either that a stable market for the kind of work the worker has regained some ability to perform does not exist in his community, or, if such a market does exist, that work will not be made available to this particular worker because of the persisting effects of the work-related injury he sustained.

*Id.* (ellipsis in original) (quoting *Ibbitson,* 422 A.2d at 1011).

[¶ 19] In *Monaghan,* we listed nine nonexclusive factors that hearing officers should consider when determining whether the employee has met the burden of proof of unavailability of work with evidence from a work search:

(1) The number of inquiries made or applications submitted by an employee.

(2) Whether the search was undertaken in good faith.

(3) Whether the search was too restrictive.

(4) Whether the search was limited solely to employers who were not advertising available positions, or whether the employee also made appropriate use of classified ads or other employment resources in the search.

(5) Whether the search was targeted to work that the employee is capable of performing.

(6) Whether the employee over-emphasized work restrictions when applying for jobs.

(7) Whether the employee engaged in other efforts to find employment or increase prospects for employment.

(8) The employee's personal characteristics such as age, training, education, and work history.

(9) The size of the job market in the employee's geographic area.

*Monaghan,* 2007 ME 100, ¶ 21, 928 A.2d at 793 (citations omitted).

[¶ 20] These factors were stated:

in order to clarify that the hearing officer's task is not to focus on any single aspect of the employee's efforts, but to view the evidence through a broad lens to determine whether the employee's efforts demonstrate that she was unable to find work because (1) no stable market for the kind of work she is able to perform exists in the local community; or (2) if there is such a market, that work is unavailable to the employee due to the persisting effects of the work-related injury.

*Id.* ¶ 22, 928 A.2d at 793–94.

[¶ 21] Here, the hearing officer complimented the scope and persistence of Avramovic's work search. However, the hearing officer found that Avramovic had failed to demonstrate that, considering his skills and work restrictions, work was unavailable to Avramovic in his local community because:

Mr. Avramovic has focused his efforts almost exclusively on positions within the fields of accounting, bookkeeping and financial services. But he has a

breadth of education and work experience and a variety of skills and is capable of performing a fairly wide range of jobs within his work restrictions, including jobs in many fields other than those he has targeted.

[¶ 22] Because Avramovic did not specifically request further findings regarding the work search, we will infer that the hearing officer found all the facts necessary to support his decision, and we will inquire if such inferred findings are supported by the record. *See Maietta v. Town of Scarborough.*, 2004 ME 97, ¶ 17, 854 A.2d 223, 227.

[¶ 23] Even judged by this standard, however, the hearing officer's findings on the adequacy of the work search are inconsistent to such an extent that they do not permit a reasoned appellate review. The hearing officer complimented the scope and persistence of Avramovic's work search, yet found that it was insufficient because Avramovic focused "almost exclusively" within the accounting and financial area in which Avramovic had been educated. The record here, however, reflects that the work search included approximately *fifty* jobs that Avramovic might be medically qualified to perform outside the accounting and financial area.

[¶ 24] When the hearing officer relies exclusively on one factor in rejecting a work search, and that factor appears to substantially lack support in the record, we cannot engage in meaningful appellate review.

[¶ 25] Other opinions in which we have determined that a work search was insufficiently broad involve work searches far narrower than the one conducted by Avramovic. *See Cote v. Osteopathic Hosp. of Me., Inc.*, 432 A.2d 1301, 1305 (Me.1981) (four inquiries all in the nursing field); *Drew v. Gen. Elec. Co.*, 429 A.2d 533, 533 (Me.1981) (employee looked for work only with his work-injury employer); *Harrington v. Goodwin's Chevrolet, Inc.*, 400 A.2d 358, 360–61 (Me.1979) (two inquiries in area where employee not licensed); *Wadleigh v. Higgins*, 399 A.2d 871, 873 (Me. 1979) (seven applications, all for physically demanding jobs).

[¶ 26] The hearing officer erred as a matter of law by relying on a single aspect of the search, the asserted limited scope of the search, when the record does not support the finding that the work search had an unreasonably limited scope. Accordingly, we remand to the hearing officer for reconsideration of the work search issue in light of all the factors stated in *Monaghan.*[2]

The entry is:

Decision of the hearing officer vacated in part and remanded for reconsideration in light of this opinion.

---

**2.** Our decision in *Monaghan v. Jordan's Meats*, 2007 ME 100, 928 A.2d 786, was issued shortly before the hearing officer's decision in this case, and may not have been fully considered in argument and decision-making before the hearing officer.